Pennsylvania State Education Association and Edward Miscavage, Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare et al., Respondents.

Argued May 4, 1982, before President Judge CRUMLISH and Judge ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

*Catherine C. O'Toole,* for petitioners.

*Maura A. Johnson,* Deputy Attorney General, with her *David H. Allshouse, Mary Frances Grabowski* and *Richard D. Balnave,* Deputy Attorneys General, *Allen C. Warshaw,* Chief, Special Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE MACPHAIL, August 12, 1982:

Before us[1] are the preliminary objections of the Department of Public Welfare (DPW) and Luzerne County Child and Youth Services (Respondents) in the nature of a demurrer[2] to an amended petition for review filed by the Pennsylvania State Education Association and Edward Miscavage (Petitioners).

The factual background of this case relates to a report of suspected child abuse filed against Petitioner Miscavage, a public school teacher, in September of 1980, pursuant to the provisions of the Child Protective Services Law (CPSL), Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §§2201-2224.[3]

---

[1] Argument of this case was originally heard by the author of this opinion during "duty week". In view of the importance of the case the President Judge directed that it be reargued before the court en banc. No disposition of the issues raised was made by the duty judge.

[2] Respondents have withdrawn their preliminary objections relating to laches and standing.

[3] This decision has been reached on the basis of the provisions of the CPSL as they existed prior to their recent amendment by the Act of June 10, 1982, P.L.   , No. 136. No statute or regulation promulgated by an administrative agency shall be construed

Petitioners filed their amended petition for review in the nature of an action for declaratory judgment and injunctive relief.[4] Essentially, Petitioners seek a declaratory judgment stating the public school teachers are *not* subject to the provisions of the CPSL or the pertinent DPW regulations (Regulations), 6 Pa. B. 836 (1976), promulgated thereunder, and an injunction which would prohibit Respondents from exercising any jurisdiction over Petitioner Miscavage or any other public school teacher under the provisions of the CPSL or the Regulations. Respondents, of course, contend that public school teachers *are* included within the purview of the CPSL and the Regulations.

Since all well pled factual matters in the amended petition for review are admitted for the purpose of our ruling on the demurrer, *Burgerhoff v. Pennsylvania State Police,* 49 Pa. Commonwealth Ct. 49, 410 A.2d 395 (1980), we will proceed to address the issue raised by the demurrer, mindful of the case law which instructs us that a demurrer may be sustained only where the law says with certainty that no recovery is permitted and that if there is any doubt about sustaining a demurrer, that doubt should be resolved in favor of overruling it. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970).

Both Respondents and Petitioners seem to hinge their respective arguments on opposite interpretations of the statutory language ''a person responsible

to have retroactive effect unless it was clearly and manifestly intended to be so applied. *Stormer v. Department of Public Welfare,* 37 Pa. Commonwealth Ct. 192, 389 A.2d 722 (1978). In a courtesy letter to the Court after oral argument, DPW advised us of the amendatory statute and asserted that the unamended CPSL appeared to remain applicable to the issue now before us.

4 On October 22, 1981, an order was issued by this Court denying Petitioners' application for a preliminary injunction.

for the child's welfare" as found in Section 3 of the CPSL, 11 P.S. §2203, which defines, *inter alia,* an "abused child" as:

> [a] child under 18 years of age who exhibits evidence of serious physical or mental injury not explained by the available medical history as being accidental, sexual abuse, or serious physical neglect, if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents *or by a person responsible for the child's welfare.* . . . (Emphasis added.)

Our task is to determine whether the legislature intended to include public school teachers when it used those emphasized words.

For guidance in determining legislative intent, we employ the provisions of Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921, particularly Section 1921(c). In this instance, the legislature has articulated in Section 2 of the CPSL, 11 P.S. §2202, the necessity for the statute, the mischief to be remedied thereby and the object to be obtained thereby as follows:

> [t]o encourage more complete reporting of suspected child abuse and to establish in each county a child protective service capable of investigating such reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for *children and parents* involved so as to ensure the child's well-being *and to preserve and stabilize family life,* wherever appropriate. (Emphasis added.)

Concerning contemporary legislative history, we note that Senator O'Pake expressed in the debate over the Senate's concurrence to the House Amendments to the CPSL:

The bill now before us also seeks to help *families* where child abuse is detected, in order to further strengthen and preserve *that family unit* whenever possible. There is no substitute in our society for the guiding and loving direction of *parents* in a child's own home. This bill seeks to strengthen *that home or family unit* by mandating that specific rehabilitative services be made available to *families which have produced child abuse.* (Emphasis added.)

1 Leg. J.-Sen. 926 (1975).

The emphasis on "parents" and "families" is found throughout the CPSL in Sections 6(c), 8(b), (e), and 17(4), (5), (8), 11 P.S. §§2206(c), 2208(b), (e), 2217(4), (5), (8). The only references to schools or teachers are in Sections 4(b)-(c) and 11, 11 P.S. §§2204(b)-(c), 2211. In those instances where a teacher is mentioned, the teacher is regarded as a *reporter* of abuse.

In our original excerpt from the definition of "abused child", supra, we did not include the exception provisions. One of these relates to situations where a child is being treated through religious means; the other says that a child shall not be deemed physically or mentally abused:

[o]n the grounds of environmental factors which are beyond the control of the person responsible for the child's welfare such as inadequate housing, furnishings, income, clothing and medical care.

We think the clear import of this language is that persons responsible for the child's welfare customarily provide such matters as housing, clothing, furnishings, income and medical care for children in their care but where circumstances beyond their control prevent them from doing so, they will not be sub-

ject to the CPSL. By the same token, we believe it is equally clear that teachers *never* provide such items for students. The fair inference is that teachers were not contemplated to be within the category of persons responsible for the child's welfare as that term is used in the statute.

We observe that the rehabilitative features of the legislation, which are substantially expanded in the amendments to the CPSL, are directed to the child and his family in the child's home. Section 17(4), (5), (7), (8), (11), 11 P.S. §2217(4), (5), (7), (8), (11).

In summary, a review of the CPSL in its entirety, leads us to the conclusion that we are unable to say with any degree of certainty that public school teachers were ever intended to be included within the meaning of "person[s] responsible for the child's welfare" as those words are used in the CPSL. We say this after due consideration of Section 1317 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1317[5] to which we have been referred by the Respondents. It is our opinion that the statutory provision invests *authority* in public school teachers; it does not impose a *duty* upon them. It has been held that Section 1317 of the Code was "never intended" to invest in teachers all the authority of parents over their children but rather only such authority as is necessary to maintain disci-

[5] Section 1317 provides as follows:

Every teacher, vice principal and principal in the public schools shall have the right to exercise the same authority as to conduct and behavior over the pupils attending his school, during the time they are in attendance, including the time required in going to and from their homes, as the parents, guardians or persons in parental relation to such pupils may exercise over them.

pline in the schools. *Axtell v. LaPenna*, 323 F. Supp. 1077 (W.D. Pa. 1971). Thus, where a parent who has the right to administer corporal punishment, withholds consent from the imposition of corporal punishment by a teacher or school administrator, the wishes of the parent will control notwithstanding the provisions of Section 1317. *Glaser v. Marietta*, 351 F. Supp. 555 (W.D. Pa. 1972). Further, in this regard we agree with Petitioners that where a child has been abused by a teacher, the right to invoke criminal sanctions against the teacher is available to the child and his parents, as are civil remedies such as proceedings to dismiss the teacher involved. We believe we may safely assume that the legislature was well aware of the legislation already "on the books" which would protect children from abuse by school employes and, by enacting the CPSL did not intend to duplicate those provisions, but rather, intended to fill a gap in an area where no prior legislative protection had been provided.

It is also urged by Respondents that the public welfare, *i.e.* the protection of children from abuse, must prevail over the individual rights of school teachers. We agree that the public welfare must always prevail but we view the CPSL as fulfilling that desirable goal by protecting the child in his home and from his family and not by subjecting teachers to a new body of law, especially where there are other remedies available to accomplish the same purpose.

The final argument urged upon us by Respondents is that the legislature's failure to disturb the administrative interpretation of "person[s] responsible for the child's welfare" is an indication of the legislative intent to include teachers within the coverage of the CPSL. We reject this argument as being totally without merit, especially in view of the fact that to our knowledge this case represents the first occasion

the question of whether or not a teacher is included within the CPSL or the DPW Regulations has been raised. Since the legislature would have no idea about how the DPW would construe either the statutory language or the Regulations it would be difficult to assume that their inaction in this regard is an indication of any intent whatsoever. We might add that we are unaware of any cases which have held that legislative *inaction* has been held to be a valid tool for statutory construction.

Since we have concluded that public school teachers are not within the purview of the CPSL as offenders, we may dispense with Respondents' contention that its Regulations are sufficiently broad to cover public school teachers. We note, as an aside only, that given the opportunity in its Regulations to specifically name teachers as being included within the statutory phrase of ''person responsible for the child's welfare'', DPW failed to do so. Instead, Respondents now urge that the broad language[6] of its Regulations encompasses teachers. We will not indulge ourselves in another construction problem but rather will dispose of this issue on the narrow but well established legal ground that regulations promulgated by an administrative agency pursuant to statutory directive are invalid if they are contrary to the legislative intent of statutory provisions to which they relate. *Clough v. Tax Review Board,* 20 Pa. Commonwealth Ct. 464, 342 A.2d 483 (1975). Having construed the CPSL legislative intent as excluding public school teachers, we would be inconsistent if we held that the interpretation of

---

[6] The pertinent regulation, which appears at 6 Pa. B. 836 (1976), provides as follows:

2-23-35. Person Responsible for the Child's Welfare is any person, institution, agency, or program providing permanent or temporary care, supervision, or control of a child either by legal authorization or consent of the legal custodian.

a regulation adopted pursuant to the provisions of that statute, could be now construed as including teachers.[7]

As we have previously noted, we cannot say with any certainty that Petitioners will not succeed with their litigation and having that doubt, we are compelled to overrule the demurrer. *Clevenstein.*

### ORDER

It is ordered that Respondents' preliminary objections are hereby overruled.

---

[7] It must be observed that we do not hold the regulations invalid, nor any part thereof; rather, we here decide that public school teachers are not subject to the provisions of the CPSL while in the performance of their duties.