George E. Lopata, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review.

Submitted on briefs February 3, 1984, before Judges MacPhail, Doyle and Barry, sitting as a panel of three.

*George E. Lopata,* for himself.

*Charles G. Hasson,* Acting Deputy Chief Counsel, with him *Michael Alsher,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

Opinion by Judge Blatt, April 27, 1984:

George E. Lopata (claimant) appeals here an order of the Unemployment Compensation Board of Review (Board) affirming the referee's denial of benefits on the basis that the claimant did not have the required number of "credit weeks"[1] in his "base year".[2] Sec-

---

[1] "Credit week" is defined pursuant to Section 4(g.1) of the Law, *added by,* Act of July 10, 1980, P.L. 521, *as amended,* 43 P.S. §753(g.1) as ". . . any calendar week in an individual's base year with respect to which he was paid in employment as defined in this

128

tion 401(a) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §801(a).[3]

The referee's findings of fact, adopted by the Board, were that:

1. Claimant filed an application for unemployment benefits with an effective date of May

---

act, remuneration of not less than fifty dollars ($50). Only one credit week can be established with respect to any one calendar week."

[2] "Base year" is defined pursuant to Section 4(a) of the Law, *as amended,* 43 P.S. §753(a) as ". . . the first four of the last five completed calendar quarters immediately preceding the first day of an *individual's* benefit year." In the case *sub judice,* claimant's "base year" is the calendar year of 1981.

[3] Section 401(a) of the Law reads, in pertinent part:

Compensation shall be payable to any employe who is or becomes unemployed, and who—

(a) Has, within his base year, been paid wages for employment as required by section 404(c) of this act: . . .

43 P.S. §801(a).

At the time claimant applied for unemployment compensation benefits, Section 404(c) of the Law read:

(c) Any otherwise eligible employe who has base year wages in an amount equal to, or in excess, of the amount of qualifying wages appearing in Part C of the table specified for the Determination of Rate and Amount of Benefits on the line on which in Part B there appears his weekly benefit rate, as determined under subsection (a) of this section, shall be entitled during his benefit year to the amount appearing in Part D on said line: *Provided he had eighteen (18) to twenty-three (23) "Credit Weeks" during his base year or Part E provided he had twenty-four (24) or more "Credit Weeks" during this base year.*

43 P.S. §804(c).

Section 404(c) of the Law was amended, *effective January 1, 1984,* to allow benefits under Part E of the table specified for the Determination of Rate and Amount of Benefits provided that the claimant has sixteen (16) or seventeen (17) "Credit Weeks" during his base year and under Part D of the table provided that he has eighteen (18) or more "Credit Weeks" during his base year.

30, 1982, and thereby established, for purposes of determining his financial eligibility, a base year consisting of the four quarters of calendar year 1981.

2. During his base year claimant worked and had earnings of $50 or more in 17 separate weeks.

3. Claimant also worked and had earnings of more than $50 during the week ending January 3, 1981. This week is not included in the above-mentioned 17 weeks.

The only issue before us, therefore, is whether or not the week ending January 3, 1981 should be credited to the claimant's base year so as to increase the number of credit weeks now included in the base year from seventeen to eighteen. Such an increase would be required pursuant to Section 404(c) of the Law, 43 P.S. §804(c). And, of course, our scope of review always includes questions of law. Section 704 of the Administrative Agency Law, 42 Pa. C. S. §704. The Office of Employment Security (OES), in determining that the week in question should not be included, cited Unemployment Compensation Bulletin Number 871 (U.C. Bulletin No. 871) which reads in pertinent part:

If a calendar week overlaps two quarters, . . . , a credit week is assigned to the quarter in which at least four days of the week occur, even though claimant may not have worked in any of that four-day period but did work during the three-day period.

Both the referee and the Board agreed that this provision barred inclusion and the present appeal ensued.

The claimant, a pro se litigant, attacks the validity of U.C. Bulletin No. 871, arguing first that it is not in keeping with the rule that benefit provisions are to be construed liberally; secondly, that a "credit

week'' should be credited to the base year in which wages for that week are paid; and thirdly that the policy established under U.C. Bulletin No. 871 is "unfair" as it applies to him because, during the week in question, the majority of the hours he worked were during the three days which fell in 1981, which was the claimant's base year.[4]

As the Board correctly points out, U.C. Bulletin No. 871 is not a "regulation" as defined under Section 102(12) of the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §1102(12),[5] but a "policy" established by the unemployment compensation authorities to facilitate the agency's determination of a claimant's financial eligibility. In deciding the merits of the claimant's arguments, therefore, we must determine whether or not this "policy" of the agency is consistent with the legislative intent behind Section 401(a) of the Law, 43 P.S. §801(a). *Cf. Pennsylvania State Education Association v. Department of Public Welfare*, 68 Pa. Commonwealth Ct. 279, 449 A.2d 89 (1982) and *Pennsylvania Association of Life Underwiters v. Department of Insurance*, 29 Pa. Commonwealth Ct. 459, 371 A.2d 564 (1977), *aff'd*, 482 Pa. 330, 393 A.2d 1131 (1978).

---

[4] The claimant worked six of the seven days of the week in question. Three of those days, January 1-3, 1981, fell in claimant's base year. The claimant contends that of the total amount of wages paid for that six day period, 62.2% were earned on January 1-3, 1981. He argues that because he *actually* worked more during that three day period, the entire calendar week should be a "credit week" in his base year.

[5] "Regulation" is defined in Section 102(12) of the Commonwealth Documents Law as "any rule or regulation, or order in the nature of a rule or regulation, promulgated by an agency under statutory authority in the administration of any statute administered by or related to the agency, or prescribing the practice or procedure before such agency."

The Board submits that U.C. Bulletin No. 871 is logically related to the legislative scheme of disbursing unemployment compensation benefits and that the policy is nondiscriminatory when applied fairly. Further, the Board contends that a "credit week" is not included in a quarter because *wages* earned during that week are paid in that quarter but, because the *time* spent *working* during that week is deemed to be in the quarter and that, therefore, the claimant's reliance on *Wooley v. Unemployment Compensation Board of Review*, 71 Pa. Commonwealth Ct. 162, 454 A.2d 224 (1983) is misplaced.

In *Wooley,* we held that, in determining a claimant's base-year wages as defined under Section 753 of the Law, 43 P.S. §753, "wages must be included in the quarter in which they were received, not reallocated to the quarter in which they were earned." *Wooley,* 71 Pa. Commonwealth Ct. at 164, 454 A.2d at 225. Here, however, the claimant is asking this court to apply the holding in *Wooley* by analogy to the definition of a "credit week" and to conclude that, because wages for a given week are paid during a quarter, the week in which those wages were earned should be included as a credit week within that quarter. However, a careful examination of the definition of "credit week", Section 4(g.1) of the Law, 43 P.S. §753(g.1),[6] reveals that a "credit week" is defined in terms of both time and wages. We hold, therefore, that our decision in *Wooley* defining base year wages, is not applicable here.

We also believe that the policy set forth in U.C. Bulletin No. 871 is consistent with the legislative intent to award unemployment compensation benefits in a nondiscriminatory fashion. Our Supreme Court's

---

[6] *See* footnote 1, *supra.*

mandate to construe the benefit provisions of the Law liberally does not mean that the agency must develop policies or regulations which will always work to award benefits to each and every individual claimant. We believe, instead, that U.C. Bulletin No. 871, in dealing with the unique situation of where to "credit" a work week when it spans two quarters, is fair and nondiscriminatory in application.

Accordingly, we will affirm the decision of the Board.

### ORDER

AND Now, on this 27th day of April, 1984, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

---

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent. I cannot agree with the majority's conclusion that the statement issued in Unemployment Compensation Bulletin Number 871 is a general statement of policy, and not a regulation subject to the adoption and filing requirements of Sections 201 to 208 of the Commonwealth Documents Law (Law), Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§1201-1208.

The distinction between a "statement of policy" and a "regulation" was considered by the Pennsylvania Supreme Court in *Pennsylvania Human Relations Commission v. Norristown Area School Board, (Norristown),* 473 Pa. 334, 374 A.2d 671 (1977), which stated:

> A properly adopted substantive rule establishes a standard of conduct which has the force of law. . . . The underlying policy embodied in the rule is not generally subject to challenge before the agency.

A general statement of policy, on the other hand, does not establish a "binding norm" . . . . A policy statement announces the agency's tentative intentions for the future.

473 Pa. at 350, 374 A.2d at 679, *quoting Pacific Gas & Electric Co. v. Federal Power Commission,* 506 F.2d 33, 41 (D.C. Cir. 1974). In *Norristown,* the Supreme Court held that the Pennsylvania Human Relations Commission's "Desegregation Guidelines for Public Schools" constituted a statement of policy, rather than a regulation, because the document established only general guidelines to be considered in evaluating future cases, and contained no binding rule of law to be followed in every situation.

In contrast, the document in the present case states that a credit week *"is assigned* to the quarter in which at least four days of the week occur." (Emphasis added.) From such language it is clear that the document is not a statement of general policy, but rather a regulation establishing a binding rule of law applicable *whenever* a credit week overlaps two quarters.

A regulation is ineffective unless it has been formally adopted pursuant to Sections 201 to 205 of the Commonwealth Documents Law. In addition, a regulation which has not been filed with the Legislative Reference Bureau pursuant to Section 207 of the Law is not valid for any purpose and may not form the basis of an agency's decision. Section 208 of the Law, *Community Country Day School v. Department of Education,* 51 Pa. Commonwealth Ct. 286, 414 A.2d 428 (1980); *Centennial School District v. Secretary of Education,* 31 Pa. Commonwealth Ct. 307, 376 A.2d 302 (1977). Since it is apparent that the adoption and filing requirements of the Law were not observed with respect to the document in question here, the document is an ineffective and invalid regulation, and should

not have formed the basis of the decisions of the referee and Board.

Accordingly, I would reverse the decision of the Board and remand the case for the computation of benefits.