358 S.E.2d 438

## WEST VA. DEPARTMENT OF HUMAN SERVICES, et al.

v.

## Janet Sue BOLEY and the Fayette County Board of Education.

### No. 17032.

Supreme Court of Appeals of West Virginia.

June 5, 1987.

---

Charles G. Brown, Atty. Gen., Mary Beth Kershner, Asst. Atty. Gen., Janet L. Todd, Daniel F. Hedges, Charleston, for appellant.

Gordon E. Billheimer, Jr., Billheimer & Billheimer, Montgomery, WVEA, Charleston, for Janet Boley.

Elton Byron, Beckley, for Fayette Co. Bd. of Ed.

MILLER, Justice.

In this case, we are asked to determine if the circuit court was correct in holding that a public school teacher was not subject to the provisions of W.Va.Code, 49–6–1, *et seq.*, our child neglect and abuse statute, for alleged abuse of children in her classroom. We affirm the circuit court's holding.

Initially, we observe that there is no express language in this statute that places teachers within the purview of the statute. The petitioners argue that because the statute utilizes the term "custodian" in several places [1] and the term "custodian" is generally defined in W.Va.Code, 49–1–5(5), as a "person who has or shares actual physical custody of a child," [2] then a teacher should be deemed a custodian under the statute.

The only case that we have found dealing with the question is *Pennsylvania State Education Ass'n v. Commonwealth of Pennsylvania, Department of Public Welfare,* 68 Pa.Cmwlth. 279, 449 A.2d 89 (1982), in which an educational association and a public school teacher sought a declaratory judgment to determine if teachers were subject to the provisions of the Child Protective Services Law (CPSL). The court concluded they were not.

The Pennsylvania CPSL utilized the phrase "by a person responsible for the child's welfare" and the claim was made, as here, that this implicated a teacher. However, the court, 449 A.2d at 92, rejected this as giving any indication that the legislature intended to draw teachers within the ambit of the statute:

"We believe we may safely assume that the legislature was well aware of the legislation already 'on the books' which would protect children from abuse by

1. W.Va.Code, 49–6–1(b), requires the child neglect petition to be "served upon both parents and any other custodian." The word "custodian" is also used in W.Va.Code, 49–6–2, which sets out the right to counsel and the hearing procedures.

2. The full text of W.Va.Code, 49–1–5(5), is: " 'Custodian' means a person who has or shares actual physical possession or care and custody of a child, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceedings."

school employees and, by enacting the CPSL did not intend to duplicate those provisions, but rather, intended to fill a gap in an area where no prior legislative protection had been provided."

█ Moreover, we have substantial doubt that a teacher is a "custodian" under our child neglect and abuse statute, W.Va. Code, 49–6–1(b). This term is defined in W.Va.Code, 49–1–5(5).[3] In *Bowens v. Maynard,* 174 W.Va. 184, 186, 324 S.E.2d 145, 147 (1984), we spoke to the custodian question under the statute and stated: "A custodian, freely chosen by the children's parents, may not be deprived of her custody rights by the Department of Human Services arbitrarily."

█ A teacher's custody of children does not derive from any voluntary act on the part of the parents, but arises from our compulsory school attendance law, W.Va. Code, 18–8–1, which, in relevant part, provides: "Compulsory school attendance shall begin with the seventh birthday and continue to the sixteenth birthday."

The petitioners also rely on W.Va.Code, 18A–5–1, which provides that a "teacher shall stand in the place of the parent or guardian in exercising authority over the school, and shall have control of all pupils enrolled in the school from the time they reach the school until they have returned to their respective homes." They contend that this language demonstrates that the legislature intended to bring teachers within the child abuse and neglect statute.

We do not agree for several reasons. This statute was enacted in 1919,[4] long before the first enactment of the child neglect and abuse statute in 1941.[5] As we pointed out in *Smith v. West Virginia State Board of Education,* 170 W.Va. 593, 597, 295 S.E.2d 680, 685 (1982), this Code provision embodies the *in loco parentis*

doctrine which "originated in the English common law and recognizes that a parent delegates part of his parental authority while the child is in their custody." We also noted in *Smith* that one of the reasons for the doctrine was to enable the school authorities to discipline school children. Thus, the statute which incorporated the *in loco parentis* doctrine is unrelated to and perhaps inconsistent with the concepts underlying our child neglect and abuse statute.[6] Furthermore, as the court in *Pennsylvania State Education Ass'n,* 449 A.2d at 92, points out in regard to its similar statute:

> "It is our opinion that the statutory provision invests *authority* in public school teachers; it does not impose a *duty* upon them. It has been held that Section 1317 of the Code was 'never intended' to invest in teachers all the authority of parents over their children but rather only such authority as is necessary to maintain discipline in the schools. *Axtell v. LaPenna,* 323 F.Supp. 1077 (W.D.Pa. 1971)." (Emphasis in original).

The Pennsylvania court also reviewed the provisions of the CPSL and concluded that its emphasis was on the parents and the family environment of the child and, therefore, could not be deemed to include the temporary daily custody of teachers. Our child neglect and abuse statute has much the same focus, particularly as it is supplemented by W.Va.Code, 49–6D–1, *et seq.* Furthermore, as our cases indicate, our child neglect and abuse procedures involve the removal of the child from its family environment when remedial measures are unavailing. *E.g., State ex rel. W.Va.Dept. of Human Services v. Cheryl M.,* 177 W.Va. 688, 356 S.E.2d 181 (1987); *In Re Darla B.,* 175 W.Va. 137, 331 S.E.2d 868 (1985); *State v. T.C.,* 172 W.Va. 47, 303

---

3. *See* note 2, *supra,* for the text of W.Va.Code, 49–1–5(5).

4. 1919 W.Va.Acts ch. 2, § 87.

5. 1941 W.Va.Acts ch. 73.

6. In *Smith,* we curtailed the right of teachers to administer corporal punishment by prohibiting

the use of a "paddle, whip, stick or other mechanical devices." 170 W.Va. at 599, 295 S.E.2d at 687. In 1983, the legislature amended W.Va. Code, 18A–5–1, to permit the use of a paddle. This reinforces our conclusion that the legislature *did not envision* that this section would be

S.E.2d 685 (1983); *State v. Scritchfield,* 167 W.Va. 683, 280 S.E.2d 315 (1981).

There is nothing within our child neglect and abuse statute that authorizes the removal of the parent from the child. Furthermore, it is impossible to correlate the procedural mechanism in the statute to a teacher-child relationship. Our child neglect and abuse statute has as a primary policy to keep the child with the family under counseling and to remove the child only when it is necessary.[7] To impose the statutory removal procedures for children in a school setting as the petitioners urge by removing the teacher would require this Court to rewrite the statute. Procedural due process would have to be afforded the involved teacher when any removal is sought. *See North v. Board of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977). The present statutory proceedings for child neglect and abuse would have to be redesigned to afford such protection. This task is obviously more suited to the legislature.

We were confronted with a somewhat related fact pattern in *Mullins v. Kiser,* 175 W.Va. 56, 331 S.E.2d 494 (1985), where a school teacher was alleged to have participated in the abuse of a student. In that suit, the teacher's removal was sought under W.Va.Code, 6–6–7 (1979), which relates to the removal of public officials. We held that this procedure was unavailing because the teacher was not a public official and that W.Va.Code, 18A–2–8, dealing with the removal of teachers, was applicable.

Among the arguments advanced in *Mullins* was one that underlies the petitioners' concerns in this case, i.e., that if a board of education does not act to discipline or remove a teacher, a citizen is without reme-dy. In *Mullins,* 175 W.Va. at 58, 331 S.E.2d at 496, we explained that this was not the case:

"[A] public school employee may be dismissed on a complaint initiated by a citizen outside the school system. *Mason Cty. Bd. of Educ. v. State Supt. of Schools,* [165] W.Va. [732], 274 S.E.2d 435, 439 (1981). A school board has a duty to consider and act on such citizens' complaints, and may be compelled to do so by appropriate legal action if its inaction is arbitrary. *See, e.g., State ex rel. Withers v. Board of Educ.,* 153 W.Va. 867, 879–81, 172 S.E.2d 796, 802–04 (1970)."

Moreover, as *Pennsylvania State Education Ass'n* points out, in addition to removal under teacher disciplinary statutes, it is possible for a teacher to be sued civilly or charged criminally for child abuse. We acknowledged the availability of these remedies in *Smith v. West Virginia State Bd. of Education, supra.*

■ Finally, we decline to create a removal right against teachers under the child neglect and abuse statute when there is a specific removal provision available under W.Va.Code, 18A–2–8, which covers this situation.[8] To do so would run counter to our traditional rule of statutory construction that a specific statute will take precedence over a general statute dealing with the same subject matter. *E.g., Manchin v. Dunfee,* 174 W.Va. 532, 327 S.E.2d 710 (1984); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983); *State ex rel. Sahley v. Thompson,* 151 W.Va. 336, 151 S.E.2d 870 (1966).

■ For the foregoing reasons, we conclude that the provisions of W.Va.Code, 49–

---

construed to include school personnel under our child neglect and abuse statute.

7. The petitioners do not argue and we do not address whether the child may be removed from the classroom upon allegations of child abuse by a teacher.

8. W.Va.Code, 18A–2–8 (1985), provides:
"Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or willful neglect of duty, but the charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine [§ 18–29–1 et seq.], chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended."
While this statute was amended in 1985, its basic grounds for removal have been longstanding.

6–1, *et seq.*, relating to child abuse and neglect, are not applicable to remove or discipline a teacher who is alleged to have abused students. Such removal or disciplinary procedures should be accomplished under the provisions of W.Va.Code, 18A–2–8 (1985), our teacher disciplinary statute. Therefore, the ruling of the circuit court is affirmed.

Affirmed.