# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## SEPTEMBER 2019 TERM

_____

No. 18-0211

_____

**FILED**

**November 12, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

AUSTIN JOSEPH GOODWIN,
Petitioner

V.

BOARD OF EDUCATION OF FAYETTE COUNTY,
Political Subdivision of the State of West Virginia,
WEST VIRGINIA BOARD OF EDUCATION, AND
STEVEN L. PAINE, Ed.D., in his official capacity
as West Virginia Superintendent of Schools,
Respondents

_____

Appeal from the Circuit Court of Kanawha County
Honorable Jennifer F. Bailey, Judge
Civil Action No. 16-C-1447

**AFFIRMED**

_____

Submitted:  October 29, 2019
Filed:  November 12, 2019

Steven R. Broadwater, Jr., Esq.
Kevin B. Burgess, Esq.
Hamilton, Burgess, Young & Pollard, PLLC
Fayetteville, West Virginia
Attorneys for Petitioner

Jared C. Underwood, Esq.
Chip E. Williams, Esq.
Pullin, Fowler, Flanagan, Brown
& Poe, PLLC
Beckley, West Virginia
Attorneys for Respondents

JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      A determination of whether a county board of education is entitled to assert qualified immunity as a state actor in a civil action, after the West Virginia Board of Education has intervened in the county school system pursuant to W. Va. Code § 18-2E-5 [2017], will depend upon the degree of control the West Virginia Board of Education exercises over the county's school system.

3.      "To determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions."  Syllabus point 10, in part, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

4. "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syllabus point 11, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W.Va. 492, 766 S.E.2d 751 (2014).

**Hutchison, Justice:**

The Petitioner, Austin Joseph Goodwin, brought this appeal from a January 31, 2018 summary judgment order of the Circuit Court of Kanawha County. The Petitioner filed a civil action against the Respondents based upon injuries he received while wrestling on a public school soccer field.[1] The circuit court granted summary judgment against the Petitioner after concluding the Respondents were entitled to qualified immunity. The Petitioner contends that the Respondents are not entitled to qualified immunity. Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we affirm.

---

[1]The Respondents are the Board of Education of Fayette County, West Virginia Board of Education, and Steven L. Paine, West Virginia Superintendent of Schools. When this case was filed, Michael J. Martirano was the West Virginia Superintendent of Schools. However, during the pendency of this case Dr. Paine was appointed to the position. Accordingly, pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, Dr. Paine, in his official capacity as West Virginia Superintendent of Schools, has been substituted as a party in this appeal. *See* W.Va. R. App. P. 41(c) ("When a public officer is a party to an appeal or other proceeding in the Supreme Court in his official capacity and during its pendency . . . ceases to hold office, the action does not abate and his successor is automatically substituted as a party.").

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The record in this matter indicates that on June 9, 2014, the Petitioner was enrolled as a junior at Oak Hill High School, Oak Hill, West Virginia.[2]  On that date, the Petitioner and another student, Katherine Deel, left the high school building without authorization after the seventh period of class.  The Petitioner and Katherine went to a soccer field near the school, where they met two other students, Zach McCarthy and Levi Blevins.  After watching Zach and Levi wrestle, the Petitioner decided to wrestle with Zach.  While wrestling with Zach, the Petitioner severely injured his left arm.  The Petitioner contends that he has incurred approximately $200,000 in medical expenses as a result of the arm injury.

Subsequent to the injury to his arm, the Petitioner filed a civil action on May 11, 2016, against the Board of Education of Fayette County, the Fayette County Sheriff's Department and Deputy Matthew Kessler.  The case was filed in the Circuit Court of Fayette County.  The Petitioner amended the complaint on July 6, 2016, to name the current Respondents as defendants.[3]  The amended complaint alleged that the Respondents "were negligent in the operation of Oak Hill High School, in permitting students to depart the

---

[2]The Petitioner was eighteen years old at that time.

[3]The amended complaint did not name the Fayette County Sheriff's Department or Deputy Matthew Kessler as defendants.

school premises unsupervised during school hours, and engage in horseplay and roughhousing, unsupervised[.]" After the amendment to the complaint, the case was transferred to the circuit court in Kanawha County.

After a period of discovery, the Respondents moved for summary judgment in October of 2017. A hearing on the motion was held on December 8, 2017. At the conclusion of the hearing, the circuit court ruled from the bench that the Respondents were entitled to qualified immunity. The circuit court also ruled that, because the Petitioner was an adult when he left the school, the Respondents no longer owed him a duty at the time of the injury. The circuit court subsequently issued an order on January 31, 2018, granting summary judgment to the Respondents and dismissing the case. This appeal followed.

## II.

### STANDARD OF REVIEW

In this proceeding, we are called upon to review a summary judgment order of the circuit court. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). We have long recognized that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). Mindful of

the *de novo* standard governing our review, we proceed to consider the substantive issues raised.

## III.
## DISCUSSION

The Petitioner contends that the circuit court committed error in finding that the Respondents were entitled to qualified immunity. Two issues are involved with the question of the applicability of qualified immunity to the Respondents. The first issue is whether the Respondent, Board of Education of Fayette County (hereinafter "County Board"), was a state actor for purposes of qualified immunity.[4] The second issue is whether the Respondents are entitled to qualified immunity. We will address the issues separately.

**1. The County Board was a state actor**. The Petitioner contends that the circuit court erred in finding the County Board had qualified immunity and was not subject to a civil action under the West Virginia Governmental Tort Claims and Insurance Reform Act[5] because it was a state actor at the time of his injury. The Respondents argue that the circuit court did not err in finding the County Board was a state actor, because at the time

---

[4]The Petitioner does not deny that the West Virginia Board of Education and the West Virginia Superintendent of Schools are state actors.

[5]*See* W. Va. Code § 29-12A-1 *et seq*.

4

of Petitioner's injury the West Virginia Board of Education (hereinafter State Board) had intervened in the County Board's school system pursuant to W. Va. Code § 18-2E-5.

As a general matter, we have recognized that W. Va. Code § 18-2E-5 "provides for the process of improving education, establishing education standards, conducting statewide assessments, requiring accountability measures, creating audit systems, establishing school accreditation levels, assigning school system approval levels, and intervening to correct low performance." *West Virginia Bd. of Educ. v. Croaff*, No. 16-0532, 2017 WL 2172009, at *1 (W. Va. May 17, 2017) (Memorandum Decision). The record indicates that the State Board intervened in the County Board school system in 2010, and that such intervention was in place when the Petitioner sustained his arm injury in 2014. At the time of the State Board's intervention in 2010, its intervention authority over county school systems was contained in W. Va. Code § 18-2E-5(p)(4)(C), which provided:

> Whenever nonapproval status is given to a school system, the state board shall declare a state of emergency in the school system. . . . If progress in correcting the emergency, as determined by the state board, is not made within six months . . . the state board shall intervene in the operation of the school system to cause improvements to be made that will provide assurances that a thorough and efficient system of schools will be provided. This intervention may include, but is not limited to, the following:
>
> (i) Limiting the authority of the county superintendent and county board as to the expenditure of funds, the employment and dismissal of personnel, the establishment and operation of the school calendar, the establishment of instructional programs and rules and any other areas designated by the state board by rule, which may include delegating decision-making authority regarding these matters to the state superintendent;
>
> (ii) Declaring that the office of the county superintendent is vacant;

5

(iii) Delegating to the state superintendent both the authority to conduct hearings on personnel matters and school closure or consolidation matters and, subsequently, to render the resulting decisions and the authority to appoint a designee for the limited purpose of conducting hearings while reserving to the state superintendent the authority to render the resulting decisions;

(iv) Functioning in lieu of the county board of education in transfer, sale, purchase or other transaction regarding real property; and

(v) Taking any direct action necessary to correct the emergency including, but not limited to, the following:

(I) Delegating to the state superintendent the authority to replace administrators and principals in low performing schools and to transfer them into alternate professional positions within the county at his or her discretion; and

(II) Delegating to the state superintendent the authority to fill positions of administrators and principals with individuals determined by the state superintendent to be the most qualified for the positions....[6]

---

[6]The statute has been rewritten and the State Board's intervention authority is now found in W. Va. Code § 18-2E-5(m)(2) (2017) as follows:

When extraordinary circumstances exist . . . the state board may declare a state of emergency in the school system. . . . If progress in correcting the extraordinary circumstances, as determined by the state board, is not made within six months from the time the county board receives the recommendations, the state board shall intervene in the operation of the school system to cause improvements to be made that will provide assurances that a thorough and efficient system of schools will be provided. This intervention may include, but is not limited to, the following:

(A) Limiting the authority of the county board in areas that compromise the delivery of a thorough and efficient education to its students as designated by the state board by rule, which may include delegating decision-making authority regarding these matters to the state superintendent who may:

(B) Declare that the office of the county superintendent is vacant;

(C) Declare that the positions of personnel who serve at the will and pleasure of the county superintendent as provided in section one, article two, chapter eighteen-a of this code, are vacant, subject to application and reemployment;

(D) Fill the declared vacancies during the period of intervention; and

The issue of whether a county school board is a state actor as a result of the State Board's intervention under W. Va. Code § 18-2E-5 is one of first impression for this Court. However, Chief Judge Goodwin of the United States District Court for the Southern District of West Virginia was called upon in two cases to decide whether a West Virginia county school board becomes a state actor, for immunity purposes, when the State Board intervenes in its school system under W. Va. Code § 18-2E-5.[7] In the first case, *Workman v. Mingo County Schools*, 667 F.Supp.2d 679 (S.D.W.Va. 2009), the mother of a child sought a religious exemption for the child from a mandatory public school immunization program. The exemption was denied and the mother filed a suit in federal court against the Mingo County Board of Education and others. At the time of the suit, the State Board had intervened in the Mingo County school system under the authority of W. Va. Code § 18-2E-5. Consequently, the Mingo County Board moved for summary judgment on the grounds that it was a state actor as a result of the State Board's intervention in its school system. The Mingo County Board argued that it was entitled to state immunity under the Eleventh Amendment of the federal constitution. The federal district court agreed as follows:

> The Fourth Circuit has enumerated a list of factors to determine whether an entity is an arm of the state. *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219 (4th Cir.2001). While emphasizing that the most important factor "is

---

(E) Take any direct action necessary to correct the extraordinary circumstance.

[7] Both cases decided by Chief Judge Goodwin involved the same version of W.Va. Code § 18-2E-5(p)(4)(C) that is applicable in the instant case.

whether a judgment against the governmental entity would have to be paid from the State's treasury," this factor is not necessarily dispositive:

> To examine the nature of the entity and its relationship with the State, we keep the State treasury factor in the calculus and look to three additional factors: (1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys; (2) the scope of the entity's concerns—whether local or statewide—with which the entity is involved; and (3) the manner in which State law treats the entity. Under this "sovereign dignity" inquiry, a court must, in the end, determine whether the governmental entity is so connected to the State that the legal action against the entity would . . . amount to "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."

> Id. at 223–24 (internal citations omitted).

. . . .

With respect to the first *Cash* factor, the "degree of control that the State exercises over the entity" is immense; the "degree of autonomy from the State that the entity enjoys" is negligible. For example, the statute empowers the State Board to "[l]imit the authority of the county superintendent and county board" in "any . . . area[ ] designated by the [S]tate [B]oard." W.Va. Code § 18-2E-5(p)(4)(C)(i). The second *Cash* factor, "the scope of the entity's concerns," is arguably more ambiguous; while the focus of the Mingo Board remains education in Mingo County, its takeover was conducted pursuant to a "process for improving education . . . to provide assurances that . . . high quality standards are, at a minimum, being met and that a thorough and efficient system of schools is being provided for all West Virginia public school students." W. Va. Code § 18-2E-5(a)(4). But the third *Cash* factor strongly suggests that the Mingo Board is an arm of the state. A consideration of "the manner in which State law treats the entity" reveals that the Mingo Board, after the takeover, has little to no rights of autonomy and self-control. Instead, the State Board is empowered to manage the schools in Mingo County and accordingly control the Mingo Board. State law subjects the Mingo Board to the State Board's authority in seemingly all spheres.

The State Board is an arm of the state of West Virginia and protected under the Eleventh Amendment. Because the State Board now effectively controls the Mingo Board, the plaintiff's claims against the Mingo Board are

8

constitutionally barred.  The Mingo Board's Motion for Summary Judgment is GRANTED.

*Workman*, 667 F. Supp. 2d 686-687.


In the second federal case, *B.E. v. Mount Hope High School*, No. 2:11-CV-00679, 2012 WL 3580190 (S.D.W.Va. Aug. 17, 2012), the plaintiff was a student at a Fayette County high school when she was sexually assaulted by several students.  The plaintiff and her parents sued the County Board and others in federal court.  The County Board moved to dismiss the action against it on the grounds that it was a state actor, because the State Board had intervened in the Fayette County school system under W.Va. Code § 18-2E-5.  As a result of such intervention, the County Board argued that it was entitled to state immunity under the Eleventh Amendment of the federal constitution.  The federal district court, relying on the decision in *Workman*, agreed as follows:

> [T]he plaintiffs argue that the "extent of the State Department of Education's control over the Fayette County Board of Education has yet to be determined," and any determination that the Fayette Board is an arm of the state is premature. The plaintiffs also argue that there is disagreement as to the "extent and nature of the 'degree of control'" that West Virginia exercised over the Fayette Board.
>
> . . . .
>
> When a county board of education is taken over by the state board of education pursuant to West Virginia Code § 18-2E-5, the county board of education becomes an arm of the state and is entitled to the Eleventh Amendment immunity afforded to the state. This principle was recognized in *Workman v. Mingo County Schools*, 667 F.Supp.2d 679 (S.D.W.Va. 2009). In *Workman*, this court found that § 18-2E-5 granted the State Board such broad powers that application of the Fourth Circuit's factors to determine whether an entity is an arm of the state directed that the court's conclusion that the county board was an arm of the state. *See id*. at 685–87.

9

The plaintiff in that case claimed that the Mingo County Board of Education's mandatory immunization program violated her and her minor child's First, Fifth, and Fourteenth Amendment rights. *See Workman*, 667 F.Supp.2d at 683. At the time of the alleged constitutional violations, the Mingo County Schools had been taken over by the State Board, and this court found that the takeover caused the Mingo County Board to become an arm of the state of West Virginia, and thus it was immune under the Eleventh Amendment. Similarly, in this case, the State Board took over the Fayette County Board, and thus the Fayette County Board is entitled to Eleventh Amendment immunity.

*B.E.*, 2012 WL 3580190, at *3.

In the instant proceeding the Petitioner has asked this Court to reject the analysis in the two federal cases because they "are misguided, and an overreaching effort to create an artificial cloak of governmental immunity." Although we are not bound to follow the federal decisions, we find that the record in this case supports reaching the same result that the federal decisions reached. *See Barr v. NCB Mgmt. Servs., Inc.*, 227 W. Va. 507, 514, 711 S.E.2d 577, 584 (2011) ("Although we are not bound to follow a federal court's interpretation of a West Virginia statute, in this instance we agree[.]"). In view of the foregoing we now hold that, a determination of whether a county board of education is entitled to assert qualified immunity as a state actor in a civil action, after the West Virginia Board of Education has intervened in the county school system pursuant to W.Va. Code § 18-2E-5 [2017], will depend upon the degree of control the West Virginia Board of Education exercises over the county's school system.

The State Board intervened in the County Board's school system on February 11, 2010. The Minutes from the State Board's meeting on that date show that it approved the following controls over the County Board school system:

[1] that the State Board limit the authority of the Fayette County Board of Education as to the expenditure of funds, the employment and dismissal of personnel, the establishment and operation of the school calendar, the establishment of instructional programs and rules and any other areas designated by the State Board by rule and delegate decision-making authority to the State Superintendent regarding these matters

[2] that the State Board delegate to the State Superintendent the authority to conduct hearings on personnel matters and school closure or consolidation matters and subsequently to render the resulting decisions, and the authority to appoint a designee for the limited purpose of conducting hearings while reserving to the State Superintendent the authority to render the resulting decision

[3] that the State Board limit the authority of the Fayette County Board of Education as to the ability to conduct real estate transactions and delegate to the State Superintendent the authority to act in lieu of the Fayette County Board of Education in a transfer, sale, purchase or other transaction regarding real estate

[4] that the State Board delegate to the State Superintendent the authority to replace administrators and principals in low performing schools and to transfer them to alternate professional positions within the county at his discretion

[5] that the State Board delegate to the State Superintendent the authority to fill positions of administrators and principals with individuals determined by the State Superintendent to be the most qualified for the positions

[6] that the State Board declare the office of county superintendent of schools of Fayette County to be vacant as of February 22, 2010

[7] that the State Board grant the State Superintendent the authority to hire a county superintendent to begin employment in Fayette County Schools on February 22, 2010 and set his/her salary

[8] that the State Board direct the Fayette County Superintendent and the State Superintendent, after consultation with the Fayette County Board of Education, to jointly develop and present to the State Board at a future

11

meeting a set of standards and/or a strategic plan that must be implemented in order for the Fayette County Board of Education to regain control of the school system

[9] that the State Board direct the Fayette County Interim Superintendent and/or Superintendent to provide written and/or oral progress reports to the State Board as requested.

It is quite clear from the State Board's Minutes that it exercised extensive, almost complete, control over the County Board's school system. In view of our holding and the reasoning of the federal district court decisions, and in light of the above restrictions imposed on the County Board by the State Board, we find that the County Board is a state actor for purposes of determining whether it is entitled to qualified immunity along with the other Respondents.

**2. Qualified immunity**. The Petitioner argues that the circuit court committed error in finding the Respondents were entitled to qualified immunity, because the Respondents had a statutory duty to supervise him. The circuit court found that the Respondents did not violate any statutory duty to the Petitioner.

Several principles of law guide our resolution of the qualified immunity issue in this case. To begin, as a general matter "[q]ualified immunity is an immunity afforded to government agencies, officials, and/or employees for discretionary activities performed in an official capacity." *Maston v. Wagner*, 236 W.Va. 488, 499, 781 S.E.2d 936, 947 (2015). We have held that

12

In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–1, *et seq*., and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.[8]

Syl. pt. 6, *Clark v. Dunn*, 195 W.Va. 272, 465 S.E.2d 374 (1995). This Court has also stated

that

[t]o determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions.

Syl. pt. 10, in part, *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492,

766 S.E.2d 751 (2014). Additionally, we have indicated that,

To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc*., 188 W. Va. 356, 424 S.E.2d 591 (1992).  In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. pt. 11, *W. Virginia Reg'l Jail*, 234 W. Va. 492, 766 S.E.2d 751.

---

[8] The circuit court found, and the parties do not dispute, that no evidence existed showing the Respondents' "insurance contract waived the defense of qualified immunity." *See* Syl. pt. 2, in part, *W. Virginia Bd. of Educ. v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015) ("To waive the qualified immunity of a state agency or its official, the insurance policy must do so expressly[.]").

In the instant case, the Petitioner contends that the Respondents had a nondiscretionary statutory duty to supervise him; alternatively, "if the statutory duty to supervise is deemed discretionary, the Respondents' failure to supervise constitutes a violation of clearly established statutory laws rendering qualified immunity inapplicable."[9] The statute cited by the Petitioner as imposing a mandatory or discretionary duty on the Respondents to supervise him is W. Va. Code § 18A-5-1(a) (2008), which states:

> The teacher shall stand in the place of the parent(s), guardian(s) or custodian(s) in exercising authority over the school and has control of all students enrolled in the school from the time they reach the school until they have returned to their respective homes, except that where transportation of students is provided, the driver in charge of the school bus or other mode of transportation shall exercise such authority and control over the students while they are in transit to and from the school.

The circuit court found that under W.Va. Code § 18A-5-1(a) "county school boards generally are under a duty to provide adequate supervision for its students." However, the circuit court determined that this provision did not impose a duty to supervise the Petitioner, after he left the school building without authorization, because he was an adult. In making this determination, the circuit court relied upon the definition of a student under W.Va. Code § 18A-5-1(g)(1), which provides:

> "Student" includes any child, youth or adult who is enrolled in any instructional program or activity conducted under board authorization and within the facilities of or in connection with any program under public school

_____

[9] The Petitioner presented the deposition testimony of several students who testified to skipping class at various times. The Petitioner contends that this evidence establishes that the Respondents failed to carry out their duty of supervision.

14

direction: Provided, That, *in the case of adults, the student-teacher relationship shall terminate when the student leaves the school or other place of instruction or activity*.

(Emphasis added.)[10]

We have previously recognized that "this Code provision [W. Va. Code § 18A-5-1(a)] embodies the *in loco parentis* doctrine which originated in the English common law and recognizes that a parent delegates part of his parental authority while the child is in their custody." *W. Va. Dep't of Human Servs. v. Boley*, 178 W. Va. 179, 181, 358 S.E.2d 438, 440 (1987) (internal quotations and citation omitted).[11] *See* Syl. pt. 7, in part, *Cobb v. W. Virginia Human Rights Comm'n*, 217 W. Va. 761, 619 S.E.2d 274 (2005) ("West Virginia public school teachers and school administrators stand *in loco parentis* to their students[.]"); *Smith v. W. Virginia State Bd. of Educ.*, 170 W. Va. 593, 597, 295 S.E.2d 680, 684 (1982) ("the *in loco parentis* doctrine contained in W.Va. Code, 18A–5–1, is merely an embodiment of the common law [.]"). Under the *in loco parentis* doctrine "schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision." *Doe v. Logan Cty. Bd. of Educ.*, 242

---

[10] The circuit court also noted that "school" was defined under W. Va. Code § 18-1-1(a) (2012) to mean "the students and teachers assembled in one or more buildings, organized as a unit."

[11] "The term 'in loco parentis' means in the place of a parent, and a 'person in loco parentis' may be defined as one who has assumed the status and obligations of a parent without formal adoption." *Doe ex rel. Doe v. DeSoto Par. Sch. Bd.*, 907 So. 2d 275, 283 n.1 (La. App. 2005).

W. Va. 45, 829 S.E.2d 45, 52 (2019) (Workman, J. concurring) (internal quotation marks and citation omitted). In light of the unique facts of this case, we need not go into a detailed analysis of the duty to supervise public school students. This is because we agree with the circuit court that, under the narrow facts of this case, the Respondents did not owe a duty of supervision to the Petitioner once he left the school building without authorization.

As we previously noted, the Petitioner was eighteen years old at the time of his injury. Pursuant to W. Va. Code § 2-3-1 (1974), the Petitioner was an adult. "Under this statute, upon turning eighteen an individual enjoys the rights and privileges, as well as sharing in the burdens and obligations, of adult status." *McKinney v. McKinney*, 175 W. Va. 640, 641, 337 S.E.2d 9, 10 (1985). Insofar as the Petitioner chose to skip a class and leave the school without authorization, the duty to supervise Petitioner terminated pursuant to W.Va. Code § 18A-5-1(g)(1) the moment he left the school building.[12]

---

[12] We are not concerned by the fact that the Petitioner was on Respondents' property, the soccer field, when he was injured. The dispositive issue under the specific facts of this case is that the Petitioner was not authorized to leave the school building. As we noted in *Glaspell v. Taylor Cty. Bd. of Educ*., No. 14-0175, 2014 WL 5546480, at *3 (W. Va. Nov. 3, 2014) (Memorandum Decision), school officials do not have a duty to know "what every student is doing . . . throughout a school day, particularly at the high school level."

**IV.**

**CONCLUSION**

In view of the foregoing, we affirm the circuit court's January 31, 2018, summary judgment order.

Affirmed.