656 A.2d 108

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Harold GERSTNER, Appellant.**

Supreme Court of Pennsylvania.

Submitted June 27, 1994.

Decided March 24, 1995.

Foster A. Stewart, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Scott A. Bradley, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

This appeal requires us to interpret the scope of the phrase "person responsible for the child's welfare" within the context of 42 Pa.C.S. § 5554(3).[1] If we agree with the Superior Court and conclude that appellant, Harold Gerstner, was a "person responsible for the child's welfare," then the statute of limitations is tolled and appellant will face trial on criminal charges. If we determine that appellant was not a "person responsible for the child's welfare," we must reinstate the trial court's order dismissing the criminal charges. We hold that appellant can in fact be described as a "person responsible for the child's welfare" within the context of 42 Pa.C.S. § 5554(3). The events at issue occurred on or about May 1, 1984, through December of 1987. During this period, appellant provided baby-sitting services for the two minor children (the victim and her sister) of a friend, whom he had met through their

1. § 5554. Tolling of statute
   ... [T]he period of limitation does not run during any time when:

   *       *       *       *       *       *

   (3) a child is under 18 years of age, where the crime involves injuries to the person of the child caused by the wrongful act, or neglect, or unlawful violence, or negligence of the child's parents or by a *person responsible for the child's welfare,* or any individual residing in the same home as the child, or a paramour of the child's parent.
   (emphasis added).

mutual participation in an Alcoholics Anonymous program. Appellant baby-sat for the children in his own home "sometimes once a week, sometimes less, sometimes more." When appellant cared for the children, neither their mother nor any other adult was present. Occasionally, the children would remain overnight with appellant; sometimes, the mother stayed at appellant's home with her children after appellant had watched them. However, on most of these occasions the children were alone with appellant. The children looked upon appellant as a friend of the family, and he was not paid for watching them.

On September 21, 1992, appellant was charged with one count of Indecent Assault[2] and one count of Corruption of Minors.[3] The prosecution filed a Notification of Commonwealth's Intention to Proceed Pursuant to the Tolling of Statute of Limitations Provisions under 42 Pa.C.S. § 5554(3). In its Notification, the Commonwealth acknowledged that the criminal complaint, dated on June 4, 1992, was filed after the statute of limitations had run. However, the Commonwealth contended that because the victim was under the age of 18,[4] and appellant was the paramour of the victim's parent and/or the person responsible for the victim's welfare when he watched her, the tolling provisions of 42 Pa.C.S. § 5554 would apply.

Appellant filed an Omnibus Pretrial Motion which included a motion to dismiss on the grounds that each charge against him was barred by the applicable statute of limitations. Appellant asserted that because he was not the paramour of the victim's parent, and was not in any way responsible for the child's welfare, he was never in an association with the victim sufficient to satisfy the tolling provisions of the statute.

On January 26, 1992, the Court of Common Pleas of Allegheny County held a hearing on appellant's motions. At this

2. 18 Pa.C.S. § 3126(a)(1).

3. 18 Pa.C.S. § 6301.

4. The victim in this case was seven years old when the events at issue began and was ten years of age when they ended in December 1987.

point, the Commonwealth abandoned the argument that appellant was a paramour of the victim's parent, and pursued only the theory that while baby-sitting, appellant was a person responsible for the victim's welfare. On February 22, 1993, the trial court concluded that because appellant fulfilled none of the statutory criteria, the tolling provisions of Section 5554(3) did not apply and granted Appellant's Motion to Dismiss for Violation of Statute of Limitations. On appeal, the Superior Court reversed and remanded for trial, reasoning that because Appellant was in fact a person responsible for the child's welfare, Section 5554(3) tolled the statute of limitations. *Commonwealth v. Gerstner,* 428 Pa.Super. 337, 630 A.2d 1277 (1993) (Del Sole, J. dissenting). We granted allocatur to determine the proper application of Section 5554(3).

After the January hearing on appellant's status, the trial court made the following factual findings:

The charges arose when the victim was approximately seven or eight years old. The [Appellant] was at least 53 years old when this incident occurred in 1984. The [Appellant] is not a familial relative of the victim. The mother of the victim testified that there was no romantic relationship between her and the defendant. She met him in 1983 and they became very good friends. She occasionally used other baby-sitters but during the time they were friends he would baby-sit the children once or twice a week without pay at his home. The mother characterized him as a good friend but not a father figure to her children nor an authority figure authorized to discipline the children in her absence.

(N.T. at 3, Feb. 22, 1993).

From these facts, the trial court concluded:

Clearly in light of the mother's testimony, the [Appellant] is not a parent nor, in fact, any relative at all to this child victim. Moreover, the [Appellant] was not a paramour of the mother. She testified that he was simply a friend. She also testified that she and the child victim did not reside with the [Appellant], only that they stayed at his house very briefly. Finally, the [Appellant] was not someone responsi-

ble for the child's welfare. He was merely a babysitter. The applicable cases stress that the [Appellant] exercises control over the victim and has the advantage of an authority figure that somehow deters the child from reporting the abuse. However, from the testimony of the mother, there wasn't any kind of emotional pressure on the child not to report the incident in a timely fashion. Accordingly, the Commonwealth is barred from prosecution notwithstanding 42 PACS [sic] Section 5554(3).

(*Id.* at 4–5).

In reversing, the Superior Court first discussed *Commonwealth v. Bethlehem,* 391 Pa.Super. 162, 570 A.2d 563 (1989), *alloc. denied,* 525 Pa. 610, 577 A.2d 542 (1990), which involved "sexual assaults by the victim's uncle during periodic visits to the victim's parent's home, while the victim's parents were at home in the next room." *Id.,* 391 Pa.Super. at 167, 570 A.2d at 565. The court found that the legislature did not intend the phrase "person responsible for the child's welfare" to apply "to an uncle visiting the victim's parents' home." *Id.* at 168, 570 A.2d at 566. Because the parents were present in the next room, the court reasoned that "it was the parents and not the visiting relative who remained the 'person(s) responsible for the child's welfare' " within the meaning of Section 5554(3). *Id.* The court construed the phrase "person responsible for the child's welfare" to apply "to persons under whose permanent or temporary custody and control the parent(s) or legal guardian(s) have placed a child. . . ." *Id.*

The Superior Court then applied *Bethlehem* 's definition of "person responsible for the child's welfare" as "one who has 'permanent or temporary custody and control' of the child" to Appellant and concluded,

Under the record facts of this case, it is apparent that Gerstner, as babysitter, had temporary custody and control of the child at the time the alleged offenses took place. Hence it cannot be refuted that Gerstner was responsible

for the child's welfare, and consequently, the statute of limitation period was tolled by § 5554(3).

*Gerstner*, 428 Pa.Super. at 342, 630 A.2d at 1280.

To support this conclusion, the Superior Court relied upon *Commonwealth v. Powers*, 395 Pa.Super. 231, 577 A.2d 194 (1990). There, a grandfather was convicted of offenses relating to the sexual abuse of his granddaughter while baby-sitting for her. On appeal to the Superior Court, the grandfather claimed that trial counsel was ineffective for failing to "pursue a pre-trial motion to quash on statute of limitations grounds." *Id.* at 234–235, 577 A.2d at 195. The *Powers* court concluded that the grandfather was not prejudiced by counsel's failure because, "as an adult babysitter for *absent* parents, appellant was acting as a 'person responsible for the child's welfare' within the meaning of the phrase in 42 Pa. C.S.A. § 5554(3) . . . ." *Id.* (emphasis in original).

After analyzing both *Bethlehem* and *Powers,* the Superior Court stated,

> The same logic is applicable in this case. Gerstner was the child's babysitter, in *his home,* on a regular basis. He had temporary custody and control of both children, being responsible for them for hours at a time. This included those occasions when the young girls stayed in his house overnight, under his care, while the *mother was absent.* This arrangement lasted approximately three years. The trial court minimized these facts. That the child's mother and Gerstner were not paramours has no bearing on the determination of whether he was responsible for the child's welfare while babysitting. We conclude that Gerstner was, at the time of the alleged criminal acts, responsible for the child's welfare. The trial court erred by finding otherwise.

*Gerstner*, 428 Pa.Super. at 343, 630 A.2d at 1280 (emphasis in original).

In *Bethlehem*, the Superior Court equated one responsible for a child's welfare with one who stands *in loco parentis.* *Bethlehem*, 391 Pa.Super. at 168, 570 A.2d at 566. In the case

*sub judice*, the Superior Court treated this comparison as dicta.[5]  *Gerstner* 428 Pa.Super. at 341, 630 A.2d at 1280. However, other than stating that *in loco parentis* is "used almost exclusively in matters of child custody," *id.*, the court failed to distinguish the terms.  This has resulted in some confusion.  Therefore, before addressing the merits of this case, we shall attempt to dispel the confusion surrounding the terms *in loco parentis* and "person responsible for the child's welfare."

■  As the Superior Court stated:

The term *in loco parentis* is not part of 42 Pa.C.S. § 5554; in fact, it is a specific, technical phrase used almost exclusively in matters of child custody.  Had the General Assembly intended to incorporate the term *in loco parentis* into § 5554, it would have done so, instead of using the phrase "a person responsible for the child's welfare."

*Gerstner* at 342, 630 A.2d at 1280 (emphasis in original).  The term *in loco parentis* appears in the Pennsylvania Consolidated Statutes thirty-two times.  The General Assembly knew

**5.**  The precise language of the *Bethlehem* opinion was as follows:

We construe the provision to apply to persons under whose permanent or temporary custody and control the parent(s) or legal guardians(s) have placed a child, in other words, those who stand *in loco parentis* to the child.

*Bethlehem* at 168, 570 A.2d at 566.  We agree with the Superior Court that the portion of this language equating "one with permanent or temporary custody and control of the child" with one standing *in loco parentis* was indeed dicta since the issue of what constitutes *in loco parentis* or whether one who has "permanent or temporary custody" of a child stands *in loco parentis*, was not an issue essential to the disposition of the case in *Bethlehem*.

We note, however, that the Superior Court's determination that a "person responsible for the welfare of a child" was "one who has permanent or temporary custody and control of the child" was not dicta.  The issue presented in *Bethlehem* was whether the defendant could be deemed a "person responsible for the child's welfare".  In order to resolve this issue, it was essential for the court to define that phrase.  Thus, the court's determination that a "person responsible for the child's welfare" was "one who has permanent or temporary custody and control of the child" was not dicta.  Nor does the fact that the court ultimately found that the defendant did not fall within this definition render this language dicta since such a determination simply could not have been made without applying this standard.

the meaning of the term and yet chose not to include it in Section 5554(3).

*In loco parentis* and "person responsible for the child's welfare" are not interchangeable.

> The phrase "in loco parentis" refers to a person who puts himself in the situation of the lawful parent by assuming the obligations incident to the parental relationship without going through the formality of legal adoption. The status of "in loco parentis" embodies two ideas; first, the assumption of the parental status, and, second, the discharge of parental duties.

*Commonwealth ex rel. Morgan v. Smith,* 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). Black's Law Dictionary defines *in loco parentis* as,

> In the place of the parent; instead of a parent; charged, factitiously, with a parent's rights, duties, and responsibilities.

Black's Law Dictionary 787 (6th ed. 1990). When courts find an *in loco parentis* relationship, "[t]he rights and liabilities arising out of the relation are, as the words imply, exactly the same as between parent and child." *Commonwealth v. Cameron,* 197 Pa.Super. 403, 407, 179 A.2d 270, 272 (1962). *In loco parentis* describes a relationship in which one assumes the *legal* rights and duties of parenthood.[6]

---

**6.** The concept that *in loco parentis* embodies the legal aspects of parenthood receives further support when one examines its usage in the Pennsylvania Consolidated Statutes. *See* 18 Pa.C.S. § 3206(b) (requiring consent of an adult standing *in loco parentis* when a parent or guardian is unavailable before a physician may perform an abortion upon a woman under eighteen years of age); 24 Pa.S. § 13–1327(b)(2) (preserving in the parent or parents, or person or persons *in loco parentis* to a child the right to choose the education and training for that child); 24 Pa.S. § 15–1546 (permitting a parent or person *in loco parentis* to remove child from school for religious instruction); 24 Pa.S. § 5703 (defining "parent" as a "parent of a child enrolled in a nonpublic school or a person standing *in loco parentis* to such child" under the Parent Reimbursement Act for Nonpublic Education); 50 Pa.S. §§ 4402, 4403 (authorizing a parent, guardian or individual standing *in loco parentis* to a child under the age of eighteen to apply for voluntary admission or commission to a facility as defined in the Mental Health and Mental Retardation Act of 1966); 50 Pa.S. § 7201 (empowering a parent, guardian, or person standing *in loco parentis* to a child less than

In contrast, the phrase "person responsible for the child's welfare" encompasses a broader array of relationships in which an individual need not have the requisite legal relationship of one *in loco parentis* to the child. The *in loco parentis* standard is more stringent and those who stand *in loco parentis* generally comprise a subset of those responsible for the child's welfare.[7]

Our conclusion that the *Bethlehem* court erred in equating a "person responsible for the child's welfare" with one who stands *in loco parentis*, however, in no way changes the substance of the Superior Court's holding in *Bethlehem*. In reaching its holding, the *Bethlehem* court clearly found "a person responsible for the child's welfare" to be "one who has 'permanent or temporary custody and control' of the child." It then stated, "in other words, those who stand *in loco parentis*." The Superior Court did not, however, find a "person responsible for the child's welfare" to be "one who has 'permanent or temporary custody and control of the child *and* who stands *in loco parentis* to the child." When it stated "in other words, those who stand *in loco parentis* ", it was merely citing what it believed to be a synonymous term. The fact that we now note that this term was, in fact, not synonymous does not remove any element of the definition of "person responsible for the child's welfare" given by the *Bethlehem* court.

fourteen years of age to subject that child to examination and treatment under the Mental Health Procedures Act); 51 Pa.S. §§ 20011, 20047, 20097, 20126, 20155 (permitting guardian or person standing *in loco parentis* to apply for compensation on behalf of minor children of World War II veterans, Korean Conflict veterans, Vietnam Conflict veterans, and Vietnam Conflict prisoners of war, under the Veterans' Compensation Act); 75 Pa.C.S. § 1507 (requiring the signature of a father, mother, guardian, or person *in loco parentis* to a minor under the age of eighteen on an application for a driver's license or a learner's permit); 77 Pa.S. § 562 (defining children to include step-children, adopted children, and children to whom one stood *in loco parentis* for purposes of paying compensation under the Pennsylvania Workmen's Compensation Act).

7.  We acknowledge the possibility that one may stand *in loco parentis* to a child and yet not be one responsible for the child's welfare.

■ In the case *sub judice*, the Superior Court applied *Bethlehem's* interpretation of a "person responsible for the child's welfare" as "one who has 'permanent or temporary custody and control' of the child" to appellant and concluded that he satisfied the definition. We agree.

A baby-sitter is by definition one who is temporarily entrusted with the responsibility of ensuring a child's safety and caring for its needs (i.e. ensuring its welfare) in the parent's absence. Such duties place a baby-sitter squarely within the language of Section 5554(3).

Appellant argues that such an interpretation of Section 5554(3) paints with too broad a brush. Specifically, he asserts that in adopting Section 5554(3), the legislature sought to extend the tolling provision only to those situations in which a child has been abused by one holding such a position in the child's life as to make it impossible for the child to reveal the abuse. Hence, he contends that the phrase "person responsible for the child's welfare" must be interpreted to include only those individuals who provide for the maintenance and support of the child and/or occupy a position which would serve to deter an abused child from reporting the harm.

We decline to adopt this definition of "person responsible for the child's welfare" for two reasons. First, the legislative history surrounding the enactment of Section 5554(3) is silent. Thus, we are unable to conclude that the legislature's motivation in adopting Section 5554(3) was to refrain from applying the statute of limitations only in those cases in which the perpetrator occupies a position such as would deter reportage of the abuse. On the contrary, in light of our legislature's recent enactment of 42 Pa.C.S. § 5552(c)(3), which tolls the statute of limitations for any sexual offense committed against a minor under 18 years of age, regardless of the relationship between the victim and the victimizer, we find it far more likely that Section 5554(3) was adopted with the intention of restricting application of the statute of limitations in any instance where the victim is too young or too innocent to realize the wrongful nature of the acts performed. We are

reluctant to deprive these victims of the protection Section 5554(3) provides.

We, likewise, find Section 5552(c)(3) to be a strong indication that, for the purposes of 5554(3), the legislature did not intend the phrase "person responsible for the child's welfare" to be given the restrictive definition employed by the Commonwealth Court in *Pennsylvania State Education Association v. Commonwealth, Department of Public Welfare*, 68 Pa.Cmwlth. 279, 449 A.2d 89 (1982). In *Pennsylvania State Education Association*, the Commonwealth Court was called upon to interpret the phrase "person responsible for the child's welfare" in the context of 11 Pa.C.S. § 2203 (recodified at 23 Pa.C.S. § 6303), which defines the term "child abuse". The Commonwealth Court subsequently held that a teacher was not a "person responsible for the child's welfare" on the ground that this phrase referred only to those individuals providing such matters as housing, furnishings, income, clothing, and medical care.

We find this definition, however, to be wholly inadequate even if we were to adopt appellant's position that Section 5554(3) applies only in those situations in which the perpetrator was in a position to deter the reportage of the abuse. While a school teacher may not provide a child's home environment, such an individual clearly occupies a position of sufficient authority to be able to deter a child from reporting abuse. Thus, *Pennsylvania State Education Association* is overruled.

The second reason we are reluctant to apply the restrictive definition of "person responsible for the child's welfare" proposed by appellant is that such an application would render the phrase a virtual nullity since an individual responsible for providing for the maintenance and support of a child and/or occupying such an important position in the child's life so as to be able to deter the reporting of abuse would almost certainly fall within the three other categories listed by Section 5554(3), namely, a parent, an individual residing in the same home as the child, and a parent's paramour.

Thus, we hold that for the purposes of Section 5554(3), a "person responsible for the child's welfare" includes any individual who is entrusted with custody and control of the child during a parent's absence. Since, appellant falls within this category the Superior Court was correct in determining that the statute of limitations had not run in this case. The judgment of the Superior Court is affirmed.

ZAPPALA, J., files a Dissenting Opinion.

MONTEMURO, J., is sitting by designation.

ZAPPALA, Justice, dissenting.

I dissent. To my mind, the majority's method of construing the phrase "person responsible for the child's welfare" is backward. The majority begins with the interpretation developed in the 1989 Superior Court decision in *Commonwealth v. Bethlehem*, 391 Pa.Super. 162, 570 A.2d 563 (1989), alloc. denied, 525 Pa. 610, 577 A.2d 542 (1990), then dismisses a significant segment of that interpretation, and ends by overruling the construction given to the same phrase in the 1982 Commonwealth Court decision in *Pennsylvania State Education Association v. Commonwealth, Department of Public Welfare*, 68 Pa.Cmwlth. 279, 449 A.2d 89 (1982).

In *Lock Estate*, 431 Pa. 251, 263, 244 A.2d 677, 682–83 (1968), we wrote

[i]t has been held, and rightly so, that where a decision of the Superior Court construing a statute was never modified by the Supreme Court, the presumption was that when the legislature subsequently enacted a similar statute dealing with the same subject matter, the legislature intended the same construction to be placed on the language of the subsequent statute.... Whether this presumption is derived from an interpretation of the Superior Court as a "court of last resort" under the [Statutory Construction Act] [now found at 1 Pa.C.S. § 1922(4) ], or from a common-sense view of the workings of the legislature really makes no difference. The intention of the legislature is obviously to

adopt the construction placed upon the word ... by the Superior Court. (Citations omitted.)

Following this reasoning, it should be presumed that in 1985 when the legislature enacted the statute of limitations tolling provision found at 42 Pa.C.S. § 5554(3), it intended the same construction to be given to the phrase "person responsible for the child's welfare" as had been given by the Commonwealth Court in *Pennsylvania State Education Association v. Commonwealth* three years earlier. The *P.S.E.A.* case involved construction of the Child Protective Services Law, Act of November 26, 1975, P.L. 438, as amended, particularly the definition of an "abused child" as

> [a] child under 18 years of age who exhibits evidence of serious physical or mental injury which is not explained by the available medical history as being accidental, sexual abuse, sexual exploitation or serious physical neglect *if the injury, abuse or neglect has been caused by the acts or omissions*.... (Emphasis added.) [1]

The similarity in both the subject matter and the language between the Child Protective Services Law and the tolling provision later enacted at 42 Pa.C.S. § 5554(3) is readily apparent. Indeed, the legislature duplicated not only the phrase in question here, but the entire passage descriptive of the relevant personages: "of the child's parents or by a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent." Proper analysis, then, should *begin* with the presumption that the legislature intended to adopt the construction of the Commonwealth Court, which had held that "the clear import" of the language of the Child Protective Services Law was "that persons responsible for the child's welfare customarily provide such matters as housing, clothing, furnishings, income and medical care for children in their care...." 68 Pa.Cmwlth. at 283, 449 A.2d at 92. Finding no indication that the legislature intended that a different construction

---

1. The Child Protective Services Law was subsequently codified at 23 Pa.C.S. § 6301 et seq. The statute now defines the term "child abuse" rather than "abused child," but employs virtually the same language. See 23 Pa.C.S. § 6303.

apply to the later statute, I believe that proper analysis should likewise end with this conclusion.

I also find fault with the reasoning by which the majority truncates the interpretation developed in *Commonwealth v. Bethlehem.* The court in *Bethlehem,* faced with the task of explaining the meaning of "person responsible for the child's welfare," "construe[d] the provision to apply to persons under whose permanent or temporary control the parent(s) or legal guardian(s) have placed a child, *in other words, those who stand in loco parentis to the child.*" 391 Pa.Super. at 168, 570 A.2d at 566. (Emphasis added.) The majority, in essence, dismisses the emphasized language as dictum, but chooses to retain and follow the rest of the language, "persons under whose permanent or temporary control the parent(s) or legal guardian(s) have placed a child." The rest of the language, however, is also, strictly speaking, dictum, in that it was not absolutely necessary to the decision in *Bethlehem.* The defendant in *Bethlehem* was the uncle of the victim, visiting in the victim's home with the victim's parents. Not only was he not "in loco parentis" to the child, but the parents had not even "placed the child under his permanent or temporary control."

The majority finds it significant that the legislature knew the meaning of the term "in loco parentis" and yet chose not to include it.[2] Having rejected this portion of the *Bethlehem* analysis, the majority, without explanation, nevertheless elects to accept the remaining (and now less restrictive) interpretation of a "person responsible for the child's welfare" as "one who has 'permanent or temporary custody and control' of the

---

**2.** The majority neglects to note the citation, following the critical language in *Bethlehem,* to 1 Pa.C.S. § 1903(b). The rule of statutory construction found there states that, "[g]eneral words shall be construed to take their meanings *and be restricted by* preceding particular words." (Emphasis added.) The court in *Bethlehem* thereby "explained" its use of the "in loco parentis" comparison by reference to the fact that "person responsible for the child's welfare" followed the particular word "parents." It should be noted that not only does the word "parents" immediately precede the words "person responsible for the child's welfare," the entire phrase appears as one clause which is then set off from the other types of persons identified, i.e., "any individual residing in the same home as the child" and "a paramour of the child's parent."

child." It should go without saying, however, that removal of the "in loco parentis" clause from the language borrowed from *Bethlehem* changes the entire sense of that language, to the extent that it cannot be claimed with any certainty or confidence that the Superior Court panel in *Bethlehem* would have used the phrase "permanent or temporary custody and control" without it.

Stripped of the flawed citations to authority, then, what remains of the majority's analysis is nothing more than the unsupported assertion that the legislature intended "person responsible for the child's welfare" to mean "person having permanent or temporary custody and control of the child." This, even though this same language had been construed in a more limited way by the judiciary prior to the legislature's deliberate repetition of it in the statute presently before the Court.

For the reasons stated, I would reverse the Order of the Superior Court. Finding the appellant not to be within the class of persons covered by the language of 42 Pa.C.S. § 5554(3) so as to toll the statute of limitations, I would reinstate the Order of the Court of Common Pleas of Allegheny County granting the Motion to Dismiss and discharging the defendant.