444 Pa. Superior Ct. 299 (1995)
663 A.2d 792
COMMONWEALTH of Pennsylvania, Appellant,
v.
D.M., Appellee.
Superior Court of Pennsylvania.
Argued February 22, 1995.
Filed July 28, 1995.
*300 Michael Erlich, Asst. Dist. Atty., Philadelphia, for Com., appellant.
Owen Larrabee, Asst. Public Defender, Philadelphia, for appellee.
Before ROWLEY, P.J., and CAVANAUGH, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA, FORD ELLIOTT and SAYLOR, JJ.
*301 CAVANAUGH, Judge.
D.M., a substitute high school music teacher, was found not guilty of misdemeanor indecent assault and corruption of minors in a non-jury trial before Common Pleas jurist Nicholas D'Alessandro. This appeal by the Commonwealth is from the grant of his petition to expunge his arrest record thus preserving his record of no prior arrests.
D.M., age 34, had been charged with two acts of inappropriately caressing an eleven year old student while she was assisting him at school. Both Desiree (the victim) and D.M. were fully clothed.
Although Pennsylvania has strictly regulated expungement of records of convicted persons (18 Pa.C.S.A. § 9122), expungement as it relates to individuals arrested and charged, but not convicted, is chiefly a matter of judicial decision. Our supreme court in Commonwealth v. Wexler, 494 Pa. 325, 431 A.2d 877 (1981), established that in a case where the Commonwealth was unable to bear its burden of proof at trial (as here), the expungement burden rests on the Commonwealth to show by compelling evidence justification for the retention of the unconvicted defendant's arrest records.
The Commonwealth's view of Wexler is that we should now reverse the expungement order and, in so doing, the appellant would have us undertake (as do they) a detailed review of, and weighing again of the evidence; an evaluation of the trial court's reluctance to enter a verdict; and, as an appellate court, thus consider the Wexler balancing test which weighs the Commonwealth's interests against the petitioner's due process rights. It is urged that having done so, we must perforce reverse the order of the expunction court. It is argued that this conclusion is mandated in aid of the Commonwealth's compelling duty to protect the health and safety of children.
Where, as here, appellee has been acquitted at trial, we must disagree with the Commonwealth's analysis which would re-examine the strength of the case against appellees and seek *302 to cast doubt upon the verdict reached by the trial court. The supreme court said as much in Wexler:
We cannot agree with such a conclusion. Rather, if the Commonwealth does not bear its burden of proof beyond a reasonable doubt or admits it is unable to bear its burden of proof, the Commonwealth must bear the burden of justifying why the arrest record should not be expunged.
Commonwealth v. Wexler, 494 Pa. 325, 331, 431 A.2d 877, 880 (1981) (parenthetical references omitted) (emphasis in original).
Consistent with this reading of Wexler, is Commonwealth v. Chacker, 320 Pa.Super. 402, 467 A.2d 386 (1983) which concluded that if the Commonwealth was unable to meet its burden of proof, and, as a result the defendant was not convicted, then, in the matter of expungement the burden is on the Commonwealth to demonstrate by compelling evidence reason for retention of the arrest record.
A similar analysis was undertaken in Commonwealth v. McKee, 357 Pa.Super. 332, 516 A.2d 6 (1986) where the court in a case wherein the defendant had been twice acquitted of rape, proceeded with an analysis which sought to determine if there was compelling evidence by the Commonwealth to justify retention of the arrest record. The court summarized:
The essence of this court's holdings has been that the Commonwealth's generalized concern for retention of records, applicable to all defendants, is not a sufficient basis for denying an expunction petition, see Commonwealth v. Wexler, supra. (illicit drug activity) and Commonwealth v. Chacker, supra (drug activity), nor is the retention of records to inhibit further crimes of the same sort a compelling reason. See Commonwealth v. Rose, 263 Pa. Superior Ct. 349, 397 A.2d 1243 (1979) (retail theft); Rambo v. Commissioner of Police, 301 Pa. Superior Ct. 135, 447 A.2d 279 (1982) (drug charges).
The reasons for retaining the records must be focused on the particular petitioner before the court and the justifications must pertain specifically to that case.
*303 Commonwealth v. McKee, 357 Pa.Super. 332, 337-8, 516 A.2d 6, 9 (1986).
The district attorney argues from a claimed position of parens patriae of minor children that the arrest record must be maintained since, otherwise, D.M. may accept a future position "secure in the knowledge that his extra-curricular activities with young girls will not be subject to an added measure of oversight".
The Commonwealth conducts its reexamination of the evidence and the circumstances of the trial pursuant to the following language in Wexler:
The Superior Court, in Commonwealth v. Iacino, 270 Pa.Super. 350, 411 A.2d 754 (1979) (Spaeth, J., concurring) listed several factors that should be considered in determining the respective strengths of the Commonwealth's and petitioner's interest in this type of case, and we cite them here with approval:
"These [factors] include the strength of the Commonwealth's case against the petitioner, the reasons the Commonwealth gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should expunction be denied."
Commonwealth v. Wexler, 494 Pa. 325, 329-30, 431 A.2d 877, 879 (1981).
While it is true that Wexler espouses a balancing test that in some cases would include some reconsideration of the "strength of the Commonwealth's case" and other trial factors, several aspects of the decision deserve consideration. 1) Wexler was dealing with expunction of records of petitioners whose criminal liability was extinguished by nol pros and not, as here, by acquittal at trial. 2) The approved language by Judge Spaeth in Iacino was from a concurring opinion with one joinder and was also from a case where non-culpability *304 was not established by verdict (nolle prosse after suppression of evidence).
In the absence of authority to the contrary, then, we would conclude that in cases where non-culpability has been established by jury or judicial acquittal, the Wexler balancing test is simply the petitioner's presumptive right to be free of the taint of the embryo of criminality which an arrest record proclaims as weighed against the state's interest in preserving such records.
The Commonwealth has not overcome appellee's presumptive entitlement to an expungement. While it is inarguable that under our current social mores, the evil conduct which comes closest to universal condemnation is any criminal charge, implicating in any way, an act of molestation of a child. It is a fact that appellee, a 34 year old teacher, has here faced the charge and won an unimpeachable verdict of acquittal on the merits at a trial.[1] He also fairly won an order of expunction from a separate judicial officer. We must be mindful that the law offers no greater absolution to an accused than acquittal of the charges, and that expunction of an arrest record, after being found not guilty, is not a matter of judicial clemency. Under these circumstances, the courts should not undertake to carve out exceptions to the basic proposition that expunction should follow acquittal. Commonwealth v. Richardson, 354 Pa.Super. 194, 511 A.2d 827 (1986) (defendant acquitted  "we will not allow . . . . an arrest record for an unproven charge"). There is no particularized reason why this arrest record must be maintained and we affirm the order of expunction.[2]
Our research discloses that our supreme court has not squarely faced the issue of the expungement rights of an acquitted-at-trial petitioner. A review of our appellate expungement decisions suggests that the issue is not one which *305 is best decided by developing case law. The myriad of circumstances under which arrest and non-culpable disposition may present to the courts have, and will, undoubtedly, offer an insurmountable challenge to the evolvement of symmetrical decisional law. Thus, it presents an important legal subject which is likely beyond our poor powers to evenly decide. Expungement, in the computer age, is a daunting undertaking since the fact of an arrest may find its way into a variety of investigatory, regulatory, and prosecutory data resources. Expunction may no longer be achieved by removing a paper or obliterating an entry in the files of the local police department. The right which the arrestee most imperatively seeks is a declaration of legally sanctioned deniability concerning the fact of his arrest. These are issues best considered by our legislature and we urge them to do so.[3] Our neighboring jurisdictions have legislatively addressed this important problem. See N.J. Rev. Stat. § 2C:52-6, 2C:52-14 (1979); N.Y. (Crim.Proc.) Law § 160.50 (Consol.1994); 10 Del.Code § 1025 (1994); Ohio Rev.Code § 2953.52 (1988).
Order affirmed.
TAMILIA, J., files an opinion in support of reversal.
SAYLOR, J., files a dissenting statement.
Dissenting Opinion By TAMILIA, Judge:
I respectfully dissent. The thrust of the majority's Opinion holds this Court may not reweigh the evidence as found by the trial court and therefore we are bound to affirm the expungement Order entered below. The Commonwealth takes the position that acquittal or dismissal of a charge is not the governing criterion to be applied by the court in determining whether expungement may or may not be granted and that where the Commonwealth has met its burden of establishing a superior public necessity for retaining the record, the trial *306 court, in the exercise of its discretion, should, if not must, reject the expungement claim.
This case, on its facts, is clearly distinguishable from any of the reported cases on expungement and does not turn on the weight of the evidence, as posited by the majority, but on the application of evidentiary and procedural mandates in applying the law to the facts of this case. As will be discussed below, had the court applied the proper legal standard to admission of character witness evidence, since the court found the victim to be credible, the weight given to the character evidence which became controlling would not have offset her credibility. Having said that, it then becomes clear that a second judge, hearing the expungement petition, would not have been in the position of relying on dismissal of the charges as controlling whether or not to grant the expungement petition.
I believe this is precisely the type of case where the discretion of the trial judge comes into play in denying expungement because of the overriding need to protect the most vulnerable persons in our society, children entrusted to the care of professional surrogate parents such as teachers.
The Commonwealth takes this appeal from the Order of April 6, 1993 granting appellee, D.M.'s petition to expunge his criminal record. Appellee was arrested and charged with indecent assault[1] and corrupting the morals of a minor,[2] as a result of an incident which occurred on February 21, 1992 while appellee was employed as a substitute music teacher at the Tilden School, a public school in Philadelphia.
A nonjury trial was held on August 17, 1992, before the Honorable Nicholas D'Alessandro of Philadelphia Municipal Court. At trial, the eleven-year old complainant, D.W., testified that on the morning of February 21, 1992, she and three other girls were selected to help appellee clean his room. While the other three girls were in the classroom, appellee and D.W. were in his separate office, adjoining the classroom. *307 D.W. testified appellee called her to him and put his head on her chest and his arm around her waist. Then, as D.W. bent over appellee's desk to straighten his papers, appellee put his hands around her waist and pressed his erect penis, through his clothing, against her buttocks for a few seconds. D.W. then pulled away and went into the classroom, where she began crying and related the incident to the other girls. As she was leaving the classroom, appellee stopped her, asked her what was wrong, apologized to her and asked her not to tell anyone "because I need my job." (N.T., 8/17/92, pp. 5-10.)
Appellee testified on his own behalf and stated that he "inadvertently bumped" the complainant as he passed the narrow space between his desk and the wall. Appellee denied any other physical contact with the victim. The defense also presented several character witnesses, who answered affirmatively when asked, as a group, whether appellee enjoyed a good reputation for veracity and as a law-abiding citizen.
At the conclusion of the trial, the trial court stated that although he found both the complainant and the defendant to be credible witnesses, he found a deciding factor to be the character witnesses, who created a reasonable doubt in his mind (N.T., 8/17/92, p. 73). Consequently, the trial court found appellee not guilty. I agree with the Commonwealth and the majority does not dispute or even discuss the trial court's error in not requiring the defense to establish the character witnesses' familiarity with the defendant's current reputation in the community, even admitting the testimony of another music teacher, who last had contact with defendant eight years before trial. "It is settled that evidence of a defendant's character must relate to his reputation `at or about the time the offense was committed.'" Commonwealth v. Nellom, 388 Pa.Super. 314, 323, 565 A.2d 770, 775 (1989) (citations omitted).
This factor standing alone removes this case from one in which the weight of the evidence is controlling to one wherein the trial court erroneously applied the law in weighing the evidence. This Court and the Supreme Court have stated on numerous occasions, particularly in relation to custody cases, *308 that weight given to evidence by a trial judge to facts may not be disturbed absent a gross abuse of discretion. It is an abuse of discretion when the trial court's factual conclusions are not supported by the record and are unreasonable. Kaneski v. Kaneski, 413 Pa.Super. 173, 604 A.2d 1075 (1992). Most cases which are reversed are due to the improper weight given to certain evidence. Kozlowski v. Kozlowski, 362 Pa.Super. 516, 524 A.2d 995 (1987). Thus, even though the majority declines to review the weight given to the evidence presented by the character witnesses, failure to do so ignores the abuse of discretion by the trial judge in conducting an appropriate review of that evidence.
Appellee filed a petition for expungement on September 15, 1992, asserting that he had suffered "embarrassment and irreparable harm." On April 6, 1993, the Honorable James Murray Lynn of the Court of Common Pleas of Philadelphia County, after hearing on the petition, granted the petition for expungement. In its Opinion in support of its Order, the court stated: "The Commonwealth's reason for denying defendant's expungement are [sic] negligible when weighed against defendant's interest in having his record expunged." (Slip Op., Lynn, J., 10/13/93, p. 6.) I strongly disagree.
Our Supreme Court has recognized that in certain circumstances substantive due process guarantees an individual the right to have his or her arrest record expunged.
In determining whether justice requires expungement, the Court, in each particular case, must balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records.
Commonwealth v. Wexler, 494 Pa. 325, 329, 431 A.2d 877, 879 (1981). The Wexler Court also adopted a list of factors, although not intended to be exclusive or exhaustive, to be considered in determining the respective strengths of the Commonwealth's and petitioner's interest therein: the strength of the Commonwealth's case against the petitioner; the Commonwealth's reasons for wishing to retain the records; the petitioner's age, criminal record and employment history, *309 the length of time that has elapsed between the arrest and the petition to expunge; and the specific adverse consequences the petitioner may endure should expunction be denied. Id. Where, as here, the defendant was not found guilty, the burden is on the Commonwealth to set forth compelling reasons for denial of the petition and demonstrate that expungement would be improper. Commonwealth v. Richardson, 354 Pa.Super. 194, 511 A.2d 827 (1986).
In this case, a hearing was held on the petition on April 6, 1993. Unfortunately, the arguments of counsel were held off the record and are not preserved for our review. At the conclusion of the hearing, Judge Lynn stated:
THE COURT: I am going to grant [the petition]. He was found not guilty at trial. The defendant was found not guilty at trial after a full trial. We don't know the reason for this not guilty, presumably it's because the Commonwealth witnesses were not believed.

The Commonwealth had an opportunity to fairly address the issue in the case, factual issue, present them and they had their day in court, a full day in court and there was a resolution by the finding of not guilty.
There is nothing else remaining other than the fact that there is an allegation which has been proven  not been prove rather, not been proven which is what this country is all about.
(N.T., 4/6/93, p. 2 (emphasis added).)
Inasmuch as the trial court stated unequivocally at the conclusion of trial that, independently, it found both the complainant and appellee to be credible, but found a reasonable doubt created by appellee's character witnesses alone, and inasmuch as it was not established that the character witnesses were familiar with defendant's current reputation as a truthful and law-abiding person, I would find the petition court did not consider properly the factors enumerated in Wexler, supra, 325, 431 A.2d 877.
Reviewing those factors seriatim, the Commonwealth's case was much stronger than the petition court allowed, and was *310 based not on the rejection of the complainant's testimony, but, rather, on the acceptance of flawed character testimony as the "deciding factor." Indeed, the complainant was found to be credible by the trial court, even after being subjected to vigorous cross-examination. Compare Richardson, supra, at 194, 511 A.2d 827 (denial of petition to expunge reversal in rape case where, inter alia, alleged victim was not present to testify at trial and in which petitioner was not found guilty). It can be argued with some force that absent the flawed character evidence, appellee would have been found guilty. This case differs substantially from Wexler, supra, 325, 431 A.2d 877 where the case was nolle prossed because the Commonwealth averred it could not establish a prima facie case against the accused. Under those circumstances, the Supreme Court held the Commonwealth was faced with a heavy burden to present compelling evidence justifying the retention of Mr. and Mrs. Wexler's arrest record. Here, a prima facie case was made out and the trial court found credible evidence (the victim's testimony) that the acts alleged in the complaint had occurred. Only the presentation of the alleged character evidence produced the result of acquittal in this case. In any event, the petition court failed to analyze this factor properly. The court hearing the petition for expungement did not have the benefit of hearing the victim's testimony but nevertheless is bound by the trial court's finding that the testimony was credible and therefore binding on the issue of the acts having been committed to which she testified. While the trial court also found the appellee's testimony to be credible, he did not exculpate appellee because of that testimony, but determined that a finding of guilt was not sustained beyond a reasonable doubt because of the character evidence alone. A mere affirmative response as a group by character witnesses to a question as to appellant's good character, without interrogating at least some of those witnesses, as is usually done when multiple character witnesses are presented, relating present knowledge of his character, hardly provides a conclusive basis upon which credible testimony from the victim can be ignored. Expungement is *311 not required by a finding of not guilty standing on such flawed character testimony.
I also find significant that although appellee had no prior criminal record, less than one month elapsed between his acquittal and the filing of the petition to expunge. Such a brief period of time is not conducive to a proper determination of whether expungement is warranted. It is one of the enumerated considerations in Wexler (the length of time elapsed between the arrest and the petition to expunge) which I find particularly relevant here.
Further, although it cannot be denied an arrest record poses considerable harm to an individual, harm appellee alleges here to be "irreparable,"[3] it does not override the Commonwealth's interest in retaining the record. In any event, the purposes for which the Commonwealth may retain the record of arrest are limited. The Criminal History Record Information Act, 18 Pa.C.S. § 9101 et seq., provides, in pertinent part:
§ 9124. Use of records by licensing agencies
.....
(b) Prohibited use of information.  The following information shall not be used in consideration of an application for a license, certificate, registration or permit:
(1) Records of arrest if there is no conviction of a crime based on the arrest.
18 Pa.C.S. § 9124(b)(1).
As the Commonwealth correctly notes, the welfare of children in our public schools falls under the Commonwealth's parens patriae authority. As such, the Commonwealth has an overriding interest in maintaining the records of those most critically charged with exercising that authority in our schools.[4] To allow the expungement of an arrest record resulting from an incident of sexual abuse in which the trial *312 court found the complainant to be credible would be a gross dereliction of the Commonwealth's parens patriae authority.
Consequently,
as a matter of law, the lower court failed to afford the appropriate significance to the law enforcement justification for retaining this specific appellee's arrest records. The lower court did not err in taking judicial notice of the possible harm which might be suffered by an individual, however, in this case that potential harm is far outweighed by the Commonwealth's asserted interests.
Commonwealth v. McKee, 357 Pa.Super. 332, 339, 516 A.2d 6, 10 (1986).
The inquiry, however, does not end here as the action of the trial court failed to take into account the extensive and exhaustive provisions of the Child Protective Services Law, 23 Pa.C.S. §§ 6301 et seq. Despite the limited application of 18 Pa.C.S. § 9124, supra, the adjudication by the court that the victim's testimony was credible fulfills the requirement for the definition of a "founded report" pursuant to 23 Pa.C.S. § 6303, Definitions.
"Founded report" is defined as: "a report made pursuant to this chapter if there has been any judicial adjudication based on a finding that a child who is subject of the report has been abused." Pursuant to this section, "child abuse" is defined as:
Serious physical or mental injury which is not explained by the available medical history as being accidental, sexual abuse, sexual exploitation or serious physical neglect of a child under 18 years of age if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare. . . .
Further, "sexual abuse" is defined as:
The obscene or pornographic photographing, filming or depiction of children for commercial purposes or rape, molestation, incest, prostitution or other forms of sexual exploitation of children under circumstances which indicate that the child's health or welfare is harmed or threatened thereby, *313 as determined in accordance with regulations of the [Department of Public Welfare of the Commonwealth].
It is a requirement of the Child Protective Services Law, section 6311, that school administrators report any child abuse, actual or suspected.
§ 6311. Persons required to report suspected child abuse
(a) General rule.  Persons who, in the course of their employment, occupation or practice of their profession, come into contact with children shall report or cause a report to be made in accordance with section 6313 (relating to reporting procedure) when they have reason to believe, on the basis of their medical, professional or other training and experience, that a child coming before them in their professional or official capacity is an abused child. The privileged communication between any professional person required to report and the patient or client of that person shall not apply to situations involving child abuse and shall not constitute grounds for failure to report as required by this chapter.
(b) Enumeration of persons required to report.  Persons required to report under subsection (a) include, but are not limited to, any licensed physician, osteopath, medical examiner, coroner, funeral director, dentist, optometrist, chiropractor, podiatrist, intern, registered nurse, licensed practical nurse, hospital personnel engaged in the admission, examination, care or treatment of persons, a Christian Science practitioner, school administrator, school teacher, school nurse, social services worker, day-care center worker or any other child-care or foster-care worker, mental health professional, peace officer or law enforcement official.
23 Pa.C.S. § 6311(a), (b) (emphasis added).
Since section 6319, Penalties for failure to report, provides that failure to report suspected child abuse is a summary offense for the first violation and a misdemeanor of the third degree for the second or subsequent violation, it can be assumed that the proper school official reported this matter to *314 the Department of Public Welfare as provided by section 6313, Reporting procedure.
It necessarily follows that such a report is subject to the Powers and Duties of Department of Public Welfare, 23 Pa.C.S. §§ 6331-6349. Expungement of appellee's record pursuant to the section 9122 of the Criminal History Record Information Act does not provide for expungement from the Department of Public Welfare statewide central registry. 23 Pa.C.S. § 6336, Information in Statewide central register. Failure to convict the appellant and expungement of his criminal record, however, would require the expungement of the child welfare files, leaving no safeguards or protections for children in similar situations.
While the record contained in police files would not be available to child care facilities, pursuant to section 6344(b)(1),[5] because there was no conviction, see 18 Pa.C.S. § 9121(b)(2),[6] it is incumbent on both police authorities and Public Welfare authorities to maintain these records for a reasonable time to facilitate detection and prevention of further acts of sexual abuse from individuals where the record is sufficiently convincing *315 that molestation has occurred even without the conviction. It also points to a gap in the law which needs to be closed by the Legislature to provide more adequate safeguards to children. It is not uncommon for children to be seriously abused or even put to death by persons who have had extensive arrest records for physical and sexual abuse but who have not been convicted. The need to have those records considered by schools and child welfare agencies and services for placement of children is beyond question. The recent death of a three-year old child in Allegheny County, at the hands of her putative father, after a Juvenile Court Judge placed the child with him when arrest records of his violent behavior (not resulting in conviction) were not placed before the court, is a perfect example of the need for the Commonwealth to retain such records. A sophisticated system for obtaining records from state and local police before any child is placed by Allegheny County Children and Youth Services (CYS) has resulted from the public outcry in that case.
While it is true that an en banc panel of Commonwealth Court addressed the issue of whether teachers who abuse their students are within the scope of the Child Protective Services Law and subject to the jurisdiction of the Department of Public Welfare, finding they are not, Pennsylvania State Education Association v. Commonwealth, 68 Pa. Cmwlth. 279, 449 A.2d 89 (1982) (hereinafter "P.S.E.A."), this finding is not binding on Superior Court and more importantly the Supreme Court, in a recently filed Opinion, Commonwealth v. Gerstner, 540 Pa. 116, 656 A.2d 108 (1995), overruled the P.S.E.A. Opinion which absolved teachers from being subject of Child Protective Services Law reports as "person(s) responsible for the child's welfare." Since the Child Protective Services Law was enacted, more recent legislation has expanded the protection of children by providing that the statute of limitations an offenses against children (sexual abuse) does not begin running until the minor has reached 18 years of age. 42 Pa.C.S. § 552(c)(3). Section 5554, Tolling of statute, subsection three, reaffirms section § 552(c)(3), stating:

*316 ... the period of limitation does not run during any time when:
.....
(3) a child is under 18 years of age when the crime involves injury to the person of the child caused by the wrongful act or neglect, or unlawful violence, or negligence of the child's parents or by a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parents.
It is without question that this legislation, enacted in 1985, subsequent to P.S.E.A., gave greater clarification to the definition of "persons responsible for a child's welfare," while the extension of the statute of limitations as to minors to commence running only upon the minor reaching 18 years of age signals the intent to provide a broad rather than restrictive protection of minors from adults responsible for their care.
It would appear illogical and disingenuous to find that baby-sitters and paramours could come within the class of persons responsible for the welfare of children, but teachers, who have continuous long standing and intimate associations with children and in some cases greater influence over them than their parents, would be excluded from the protection given children by the Child Protective Services Law. Teachers and principals are required to report suspected child abuse as to children in their care. It is inconceivable that a child who reports or manifests abuse from a teacher is not provided the protection of the act requiring school officials to report sexual abuse. In some teacher-student relationships, bonds become extremely strong and are of great value to the developing child. It can only be imagined how many students go on to achieve greatness in academics, sports, music or art because of the relationship with and direction by a favorite teacher. Unfortunately, however, these relationships also can be the basis whereby a teacher obtains improper and destructive control over a child who needs to be protected, thereby engaging in improper and sexually abusive activities with the child. To allege, as in P.S.E.A., that teachers are not within the definition of persons responsible for the welfare of the child is to *317 ignore reality and reports throughout the country in the newspapers and television and on our court dockets of the frequency of such occurrences. In relation to the number of children in school, the reports are small, but in aggregate number and the damaging effect on the children so victimized, the number is substantial.
Justice Montemuro, speaking for the Supreme Court, in Gerstner stated:
We, likewise, find Section 5552(c)(3) to be a strong indication that, for the purposes of 5554(3), the legislature did not intend the phrase "person responsible for the child's welfare" to be given the restrictive definition employed by the Commonwealth Court in Pennsylvania State Education Association v. Commonwealth, Department of Public Welfare, 68 Pa.Cmwlth. 279, 449 A.2d 89 (1982). In Pennsylvania State Education Association, the Commonwealth Court was called upon to interpret the phrase "person responsible for the child's welfare" in the context of 11 Pa.C.S. § 2203 (recodified at 23 Pa.C.S. § 6303), which defines the term "child abuse". The Commonwealth Court subsequently held that a teacher was not a "person responsible for the child's welfare" on the ground that this phrase referred only to those individuals providing such matters as housing, furnishings, income, clothing, and medical care.
We find this definition, however, to be wholly inadequate even if we were to adopt appellant's position that Section 5554(3) applies only in those situations in which the perpetrator was in a position to deter the reportage of the abuse. While a school teacher may not provide a child's home environment, such an individual clearly occupies a position of sufficient authority to be able to deter a child from reporting abuse. Thus, Pennsylvania State Education Association is overruled.
Id. 540 Pa. at 126, 127, 656 A.2d at 113, 114.
Due to P.S.E.A., there necessarily was a chilling effect on reports to the Department of Public Welfare abuse hot-lines, and it is questionable whether records could be retained once *318 a defendant was discharged. If neither the state child abuse reporting system nor the criminal identification system retains records of appellant's activity relating to students in his charge, the ability of the school system or the community to protect children from him is seriously impaired.
The consequence of the "see no evil, speak no evil" approach adopted by the Philadelphia Common Pleas Court in this case is vividly documented in Baby Doe v. Methacton School District, 880 F.Supp. 380 (E.D.Pa.1995). In that case, the Federal District Court refused to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for which relief can be granted. Factually, defendant DiFonzo, as a band teacher with the Methacton School District, had engaged in a three-year relationship with a 12-year old female student as a result of which, upon confrontation by the school superintendent and school principal in 1970, he agreed to sign a resignation letter they prepared stating his resignation was for "personal reasons." The school officials did not notify anyone (CYS or police) of the abuse nor did they place any indication of the true reason for the resignation in any Methacton School District files. Three weeks later, DiFonzo applied for a position as a music teacher with the Philadelphia School District. The Philadelphia School District allegedly requested a recommendation for DiFonzo from the Methacton School District, which responded that DiFonzo's services had been "satisfactory", giving no indications of possible pedophilic problems. DiFonzo was subsequently hired by the Philadelphia School District. Almost 14 years later, when DiFonzo was still an employee of the Philadelphia School District, he sexually abused Baby Doe, a 9-year old girl who was one of his students.
Relying on decisions of the Third Circuit Court of Appeals, the District Court here refused to dismiss the charge against the school district because the behavior of the superintendent and other officials over a three-year period exhibited a policy, procedure or custom by failing to act on earlier abuse or prevent future abuse and showed deliberate indifference to the welfare of Baby Doe's constitutional rights. Despite a 14-year *319 time lag between the termination by Methacton and the abuse of Baby Doe at Philadelphia, proximate cause was established in the failure to inform Philadelphia of the earlier abuse which would have resulted in rejection of DiFonzo as an employee, preventing the harm to Baby Doe.
This case clearly illustrates the necessity that all parties responsible for dealing with sexual abuse in the context of the school environment be held accountable to protect the constitutional rights of children. It lends great credence to the role of the courts and the Commonwealth, exercising parens patriae powers, to require that arrest records be preserved where the facts support a prima facie case.
The first case my research discloses which deals with this issue at the appellate level is Commonwealth v. Malone, 244 Pa.Super. 62, 366 A.2d 584 (1976). In Malone, Judge Hoffman of this Court wrote:
The instant case raises a question of first impression in Pennsylvania; whether an accused is entitled to a hearing to determine whether he has a right to expungement of his arrest record after the charges are dismissed at the preliminary hearing.
Id. at 64, 366 A.2d at 585. The majority determined that a hearing in the Common Pleas Court was required to determine whether expungement was in order after considering the competing interests of society to retention of records and the individual right of privacy. Malone did not establish a basis for determining when expungement would be justified.
In a strong dissent by Judge Van derVoort, joined by two other members of the then seven-member Court, reference was made to statutes such as the Child Protective Services Law and the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101 et seq., providing for limited expungement under certain conditions. The view of the dissent was there was no power of a court to expunge except by statutory authority. Legislation subsequent to Malone did detail more specifically conditions requiring expungement. See 18 Pa.C.S. § 9122 Expungement. But the issue presented *320 in this case has not been circumscribed by legislation and remains a matter to be determined by the court on a case-by-case basis. Wexler, supra, 494 Pa. 325, 431 A.2d 877, following amendments to the Criminal History Record Information Act dealing with expungement, continued to follow the guide established by Malone, supra, 244 Pa.Super. 62, 366 A.2d 584, Commonwealth v. Briley, 278 Pa.Super. 363, 420 A.2d 582 (1980) (where Commonwealth has been unable to establish a prima facie case against the individual petitioning for expungement, it must present compelling evidence justifying retention of the arrest record), and Commonwealth v. Iacino, 270 Pa.Super. 350, 411 A.2d 754 (1979) (listing several factors that should be considered in determining the respective strengths of the Commonwealth's and petitioner's interest in this type of case, cited with approval). Those factors are referred to supra in my analysis of the issue here. The clearest statement of the position mandated by this case is contained in Commonwealth v. Mueller, 258 Pa.Super. 219, 392 A.2d 763 (1978). There, Judge Cercone stated:
Accordingly, where the record shows that the Commonwealth made out a prima facie case of guilt on the part of an accused, he will have the burden to affirmatively demonstrate non-culpability at a hearing, otherwise his petition to expunge will be denied. If, however, such a showing is made, the court must weigh the Commonwealth's interest in retaining appellee's arrest record against appellee's interest in being free from whatever disabilities the record may create.
Id. at 223, 392 A.2d at 765.
In this case, a prima facie case was made out and despite dismissal on questionable legal grounds (character witnesses unfamiliar with defendant's current reputation), the Commonwealth was able to show a compelling interest in retaining the arrest record. No facet of present society is more disturbing and troublesome than the sexual exploitation of children by unprincipled and immoral adults. They have a capacity to infiltrate occupations and activities which provide services to children, whether it be teaching, choir groups, boy or girl scouts, camp activities or child care programs, because of the *321 presumed competence and trust imposed in such adults by society, and the imperative that children obey them and accept their directions and counsel. The vast number of dedicated and honest workers in those areas suffer from the cloud of suspicion and distrust that descends around them because of activities of unconscionable few. It is necessary for the protection of the highly vulnerable children subject to perversion, and to preserve the trust imposed in the committed and honorable employees to maintain close scrutiny over those who have been implicated within reasonable certainty in sexual exploitation of children.
Under the circumstances of this case, it is clearly necessary that the criminal history identification records be retained so that appellant's future activities may be tracked and hopefully further abusive behavior deterred.
I would vacate the Order of expungement.
SAYLOR, Judge, dissenting:
Because I conclude that the Commonwealth met its burden of justifying retention of Appellee's arrest record by reference to the factors adopted by our Supreme Court in Commonwealth v. Wexler, 494 Pa. 325, 431 A.2d 877 (1981), I respectfully dissent from the majority's decision to affirm the expungement order.
NOTES
[1] The universal scorn attached to such a charge is, of course, a reason why expungement is of great importance to one so accused.
[2] In the only instance where Pennsylvania law does provide for expunction of arrest record after acquittal, the right is unconditional. See The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. 780-119.
[3] See Russell J. Ober, Jr., Esq., Expungement of Criminal Arrest Records: the State of the Law in Pennsylvania, 83 Dick.L.Rev. 25 (1978) where a similar recommendation is made.
[1] 18 Pa.C.S. § 3126.
[2] Id., § 6301.
[3] A petitioner is not required to allege and prove he has suffered specific harm before he is entitled to expungement. Commonwealth v. McKee, 357 Pa.Super. 332, 516 A.2d 6 (1986).
[4] Although the parties do not indicate appellee's present employment status, at the time of trial he still was employed as a substitute teacher in the Philadelphia public schools (N.T., 8/17/92, p. 52).
[5] (b) Information submitted by employees.  ....

(1) Pursuant to 18 Pa.C.S. Ch. 91 (relating to criminal history record information), a report of criminal history record information from the Pennsylvania State Police or a statement from the Pennsylvania State Police that the State Police central repository contains no such information relating to that person. The criminal history record information shall be limited to that which is disseminated pursuant to 18 Pa.C.S. § 9121(b)(2) (relating to general regulations).
[6] § 9121. General regulations

.....
(b) Dissemination to noncriminal justice agencies and individuals.  Criminal history record information shall be disseminated by a State or local police department to any individual or noncriminal justice agency only upon request:
.....
(2) Before a State or local police department disseminates criminal history record information to an individual or noncriminal justice agency, it shall extract from the record all notations of arrests, indictments or other information relating to the initiation of criminal proceedings where:
.....
(ii) no conviction has occurred[.]